ABBOTT SUPPLY COMPANY, a corporation of the State of Delaware, Plaintiff, v. EDWARD SHOCKLEY and MAE GERTRUDE SHOCKLEY *and* JOHN C. ECKERT and GAIL BOND ECKERT, Defendants.

(*December* 28, 1956.)

HERRMANN, J., sitting.

*James M. Tunnell, Jr.* (of Tunnel and Tunnell)[1] for the Plaintiff.

*Stewart Lynch, Alfred R. Fraczkowski* and *Hiram W. Warder* (all of Hastings, Lynch and Taylor) for the Defendants John C. Eckert and Gail Bond Eckert.

Superior Court for Sussex County, No. 5, Civil Action, 1955.

HERRMANN, J.:

This ejectment action involves the title of land on Fenwick Island. Directly involved is a small parcel of land but indirectly involved is the title of most of the property on the Island, including hundreds of residences. See *Supplee v. Eckert, Del. Ch.,* 120 *A.* 2d 718.

The plaintiff claims title to the land here involved and brings this action against the Shockley defendants who are in possession. The plaintiff's claim is contested by the Eckert defendants who also claim title and who have been permitted to intervene to defend against the plaintiff's claim.

The following facts are uncontroverted:

The parcel of land here involved is part of a tract acquired by Fenwick Island Land Company, a Delaware corporation, in 1905 and subsequently mortgaged by it in 1908. In 1935, the Land Company was declared delinquent as to its Sussex County property taxes and the mortgaged tract was sold at a tax sale on April 16, 1935. The sale was duly confirmed by this Court on July 12, 1935. William P. Short was the successful bidder upon his bid of $50 and a tax deed covering 308 acres was duly delivered to Short on April 17, 1936. On August 4, 1939, Short conveyed all of his right, title and interest in this property to the Eckerts, defendants herein, for the sum of $500. Thus, the Eckert defendants claim title through Short by virtue of the tax deed of 1936.

The plaintiff's claim to title is based upon a foreclosure of the 1908 mortgage. On April 7, 1939, a foreclosure proceeding was commenced by Nathan W. Supplee as assignee of the mortgage. The defendant Eckert was present at the foreclosure sale, held on September 9, 1939, and he competed in the bidding. Eckert's bid was high but when it was ascertained that he could not or would not consummate the purchase, Supplee was declared the successful bidder before the sale was closed. On October 10, 1939, after confirmation of the foreclosure sale by this Court, a Sheriff's deed covering 238 acres was delivered to Supplee for $3,000. On March 30, 1954, Supplee conveyed the parcel of land here involved to the plaintiff in this action. Thus, the plaintiff claims title by virtue of the Sheriff's deed upon the mortgage foreclosure sale.

The determination of three legal questions, presented for decision, are dispositive of the case:

1) Did the tax sale extinguish the mortgage?

2) May the judgment in the mortgage foreclosure proceeding be declared void for want of jurisdiction over the Land Company?

3) May the defendants collaterally attack herein the validity of the mortgage of 1908 and the assignment thereof?

### I. *The Effect of the Tax Deed*

The tax sale was held under 1935 Code, ¶ 1429, *et seq.* At 1935 *Code,* ¶ 1445 (now 9 *Del. C.* § 8773), it was provided:

"Every sale of lands and tenements shall be returned by the Receiver of Taxes and County Treasurer to the Superior Court, in and for Sussex County, at the next term thereof, and the Court shall inquire into the circumstances, and either approve said sale, or set it aside. If it be approved, the Receiver of Taxes and County Treasurer making the sale shall make a deed to the purchaser which shall convey the title of the taxable, or of his alienee, as the case may be; if it be set aside, the Court may

order another sale, and so on until the tax due be collected. The certificate filed, together with the return and deed, shall be presumptive evidence of the regularity of the proceedings."

The controversy regarding the effect of the tax deed revolves about the construction of the statutory language "title of the taxable". The plaintiff says this phrase means the encumbered title of the taxable while the defendants insist that it means the unencumbered title.

The wording of 1935 *Code*, ¶ 1445 evolved from an early Statute which appeared at 1829 *Code*, p. 380 and which provided:

"* * * if the court shall approve the sale, the collector shall make a deed to the purchaser or purchasers for the premises sold; and thereby all the estate and title of the person or persons, as whose property the premises shall be sold, shall pass; * * *."

The phrase "title of the taxable" was substituted at some time before the 1852 *Code*. It appeared at 1852 *Code*, p. 31 and it reappeared in subsequent Codes: 1874 *Code*, p. 89; 1893 *Code*, p. 118; 1915 *Code*, ¶ 1258. Thus, the Statute here involved has been in force and effect for well over a century.

It appears that from time immemorial this Statute has been interpreted in Sussex County to mean that the title purchased at a County tax sale consisted of whatever right, title and interest the taxpayer may have held in the property at the time of the sale, *i. e.*, if the taxable held the property encumbered by a mortgage, the title as thus encumbered was what passed to the purchaser under the tax deed. This has been the accepted law and practice in Sussex County for more than a century and it has become a recognized rule of property affecting land transactions and land titles.

This time-honored construction of the Statute and the prevalence of this rule of property in Sussex is demonstrated in several ways.

First, the facts of this case clearly reflect the prevailing practice. The successful bid at the tax sale, confirmed by the Court, was $50. for 308 acres of land. This indicates that Short, the predecessor in title of the Eckert defendants, considered the tax deed as a conveyance of something less than fee simple title of 308 acres of land free and clear of all liens and encumbrances. This situation was not extraordinary. The Court takes judicial notice of sales prices reflected in its records of confirmations of tax sales and mortgage foreclosure sales. It is clear therefrom that purchasers at tax sales in Sussex County generally consider that they are buying a "pig-in-the-poke", i. e., whatever uncertain right, title and interest the taxable may hold, subject to any lien, encumbrance or other defect of record.

The existence of the rule of property here involved is also reflected at 9 *Del. C.* § 8704, wherein the current *Code* provides that a valid and subsisting lien or encumbrance shall not be discharged by a county tax sale and that such sale shall be subject to such lien or encumbrance. The editors make the following comment at 9 *Del. C.* p. 752 regarding this provision:

"The provisions, as originally enacted, while technically applicable to Kent County only, are by this revised section, made applicable in all counties to conform with accepted law and practice."

The most convincing indication, however, of the general acceptance in Sussex County of the practice and rule of property here under discussion is the record of this Court in the case of *Derrickson v. Baylis et al.*, (unreported, No. 4 October Term, 1935, Sussex County) in which this Court accorded to the practice absolute recognition without opinion or comment. In that case, property of Clara R. Littleton was sold at a Sussex County tax sale to Benjamin Ableman. Upon presentation of the tax deed to the County Board of Assessment, the Board's records were changed to show assessment in the name of Ableman rather than that of Littleton. Subsequently, Addie T. Derrickson foreclosed on a mortgage which Littleton had given on the property

prior to the tax sale. Derrickson purchased the property at the foreclosure sale and received the Sheriff's deed after the sale was confirmed by this Court. Derrickson then presented her Sheriff's deed to the Board of Assessment requesting that its records be changed to show the property assessed in her name instead of that of Ableman. The Board refused to change its records, whereupon Derrickson sought a writ of *mandamus* to command the Board to make the change. The record of the proceeding shows that it was agreed by counsel that "the only question involved was a legal one, being whether the purchaser at a sale of real estate by the Receiver of Taxes of Sussex County, for county tax assessment against said real estate took title free and clear of prior encumbrances against the real estate sold."

By order dated May 12, 1936, this Court (by former Chief Justice Layton, a member of the Sussex Bar)[1] commanded the Board of Assessment to assess the property in the name of Derrickson instead of Ableman, the Court stating that under the Statute here involved "a purchaser of lands and tenements at a tax sale conducted by the Receiver of Taxes and County Treasurer, acquires the title of the taxable and subject to the liens of record against the property sold."

I am convinced, therefore, that for many years it has been the accepted law and recognized practice in Sussex County that a tax sale does not discharge a prior mortgage lien and that the purchaser at a tax sale takes title subject to an existing mortgage of record.

The defendants challenge such construction of the statutory language "title of the taxable" upon various grounds. The defendants rely principally upon these contentions: (a) the Statute here involved does not expressly preserve a mortgage lien from extinction by a tax sale; (b) by common law, the "*in rem*" proceeding of a tax sale, such as is here involved, operates to discharge a mortgage; (c) by the express provision of 1935 *Code*, ¶ 3351, 25 *Del. C.* § 2901, the lien for county taxes is given priority over a mortgage lien; and (d) by reason of *Pottock v.*

*Mellott,* 1941, 2 *Terry* 361, 22 *A.* 2d 843, in which the Wilmington Monition Tax Statute was construed, this Court must now disregard the rule of property and the *Derrickson* case hereinabove discussed.

No useful purpose will be served by a discussion of the merits of the defendants' contentions nor of the many arguments and authorities they cite. Neither *Pottock v. Mellott, supra,* nor *Penienskice v. Short,* 8 *W. W. Harr.* 526, 194 *A.* 409, the Delaware cases on which the defendants rely, is in point. After all is said and done, the defendants are inexorably confronted by the rule of property long adhered to in Sussex County and by the construction of the Statute which has been accepted by Bar and Bench there for many years. Much property has come to depend upon this rule and practice with the result that this Court is not now free to disturb the practice even if the defendants' arguments were found to be persuasive and their conclusions logical.

As has often been said, it is almost as important that the law be settled as it is that the law be right. Compare *Blythe v. Richards,* 10 *Serg. & R., Pa.,* 261, 13 *Am. Dec.* 672. "A rule of property long acquiesced in should not be overthrown except for compelling reasons of public policy or the imperative demands of justice." *Smith v. Glen Alden Coal Co.,* 347 *Pa.* 290, 32 *A.* 2d 227, 234. Courts must avoid unsettling rules which affect the devolution of property in the absence of a strong public policy to the contrary. Compare *Delaware Trust Company v. Delaware Trust Company,* 33 *Del. Ch.* 443, 95 *A.* 2d 569; *Trustees of New Castle Common v. Gordy,* 33 *Del. Ch.* 334, 93 *A.* 2d 509, 40 *A. L. R.* 2d 544; *Application of Hickman,* 10 *Terry* 13, 108 *A.* 2d 667; 21 *C. J. S., Courts,* § 193, p. 322.

I find no public policy or demand of justice requiring this Court to abandon the existing practice in Sussex County and to construe the words "title of the taxable" differently than it has been interpreted in Sussex County for so long a time. Indeed, if we consider the confusion and disastrous effect upon land titles which would follow an abrupt abandonment of the exist-

ing rule, it may be said that strong public policy and the demands of justice compel a construction consistent with the existing practice. If there is to be a change in this area of the law, it must be accomplished by the Legislature prospectively.

Accordingly, it is held that the tax sale did not extinguish the mortgage and that, by the tax deed, Short took the Land Company's title subject to the mortgage, including the equity of redemption. This was the nature of the title which was acquired by the Eckert defendants from Short.

## II. *The Validity of the Foreclosure Judgment*

The plaintiff concedes that the defendants may collaterally attack the judgment in the mortgage foreclosure proceeding if it is apparent on the record that the judgment was void for want of jurisdiction over the Land Company. Upon this assertion the defendants contend that the foreclosure sale and the Sheriff's deed, upon which the plaintiff's claim of title is based, were nullities.

The defendants' contention in this regard is founded upon the contents of the Sheriff's return of the writ of *scire facias* in the mortgage froeclosure proceeding. The Sheriff's return reads as follows:

"Summons served personally on Fenwick Island Land Company (a corporation existing under the Laws of the State of Delaware by acceptance of service by Charles L. Harmonson Secretary and Resident Agent for the Capital Trust Company authorized by law to accept service for the Fenwick Island Land Company (a corporation existing under the laws of the State of Delaware this the 15th day of April A.D. 1939 So ans.

"Grier H. Minner

"Sheriff"

The defendants contend that this return shows failure to comply with 1935 *Code*, ¶ 2080 (now 8 *Del. C.* § 321) which pre-

scribed the manner in which service of process must be made upon a Delaware corporation. By ¶ 2080 it was provided:

"Service of legal process upon any corporation created under this Chapter shall be made by delivering a copy thereof personally to the president of such corporation, or by leaving the same at his dwelling house or usual place of abode. If the president resides out of the State, service thereof may be made by delivering a copy thereof to the secretary or one of the directors of said corporation, or upon the resident agent in charge of the principal office of the company in this State, or by leaving the same at the dwelling house or usual place of abode of such secretary, directors or resident agent (if such resident agent be an individual), or at the principal office or place of business of the corporation in this State. If such resident agent be a corporation, service of process upon it as such agent may be made by serving a copy thereof on the president or secretary or any director of said corporate resident agent. * * *."

Specifically, the defendants urge that the return shows want of jurisdiction over the Land Company because (a) the return shows that the Land Compnay was served "personally" by "acceptance of service by Charles L. Harmonson Secretary and Resident Agent for the Capital Trust Company" and the return fails to show that a "copy" of the process was delivered pursuant to the Statute; (b) the return fails to show that the Sheriff attempted to make service upon the President, the Secretary or one of the directors of the Land Company and that they were unavailable because non-resident; and (c) the return fails to recite that Capital Trust Company was resident agent for the Land Company and that Harmonson was resident agent for the Capital Trust Company.

The crux of the defendants' argument in this connection, therefore, revolves about what the return fails to show rather than what is apparent on its face. They argue that "nothing appears to show that the precise requirements of the statute were complied with."

■ It is settled, of course, that service upon a corporation must be in accordance with the statutory requirements. See *Clough v. Superior Equipment Corp.*, 18 *Del. Ch.* 202, 157 *A.* 306; *Woolley on Delaware Practice* § 191. In this jurisdiction, however, the Sheriff is not required to spell out in his return, affirmatively and expressly, that each and all of the prerequisites for legal service of process were complied with. If, however, he states anything in the return which shows that a requirement was not observed, the return may be fatally defective. See *Woolley on Delaware Practice*, p. 142; *Gibbons v. Mason*, 1 *Harr.* 452.

■ Moreover, we are involved here in a collateral attack upon a prior judgment of this Court. The general rule is that, in such situation, every reasonable presumption will be indulged to support the prior judgment of this Court and, although the record may fail to show the existence of a jurisdictional fact, it will be presumed to exist unless the contrary affirmatively appears. See *Bisbee v. Knight*, 139 *Me.* 1, 26 *A.* 2d 637; 31 *Am. Jur. "Judgments"* §§ 414, 415, 597. Another applicable rule of general acceptance is that a collateral attack may not be made upon domestic judgment, in a situation of this kind, unless the asserted lack of jurisdiction affirmatively appears upon the record. See 31 *Am. Jur. "Judgments"* § 602; compare 68 *A. L. R.* 385, 390; *Anonymous v. Anonymous*, 7 *Terry* 458, 85 *A.* 2d 706, 713.

■ I am of the opinion, therefore, that the defendants may not in this proceeding impeach the prior judgment of this Court for want of jurisdiction solely upon the basis that the Sheriff's return fails to show compliance with each successive requirement of 1935 Code, ¶ 2080. This conclusion is in accord with our acceptance of the return of "Nihil Habet" upon a writ of *scire facias* directed to a corporation and by our rule that, upon two returns of "Nihil Habet", service upon a corporation of a writ of *scire facias* becomes legal and sufficient to support a judgment. See *Wax v. Riverview Cemetery Co.*, 2 *Terry* 424, 24 *A.* 2d 431; Civil Rule 4(f) (4), *Del. C. Ann.* This is so notwithstanding our Statute which provides that a writ of *scire facias* must be served and returned in the same manner as is provided

for an original summons. See 1935 *Code,* ¶ 4581, 10 *Del. C.* § 3105.

It is held, therefore, that want of jurisdiction over the defendant in the foreclosure proceeding is not apparent on the face of the record of that proceeding because, upon collateral attack and in the absence of any indication to the contrary, the law implies and presumes each of the jurisdictional facts which the defendants contend should have been set forth in the return. Since the lack of jurisdiction does not affirmatively appear on the face of the record, the defendants may not impeach that judgment collaterally in this case. *Frankel v. Satterfield,* 9 *Houst.* 201, 19 *A.* 898, which deals with want of jurisdiction apparent on the record and upon which the defendants place their main reliance, is not applicable.

It should be noted in passing that this is not a harsh or unfair result as to the Eckert defendants. Eckert was the holder of title and of the equity of redemption at the time of the foreclosure sale and of the confirmation thereof by this Court seventeen years ago. As such, Eckert could have defended the foreclosure action and could have opposed confirmation of the sale. He may have then succeeded in avoiding the Sheriff's return and the judgment in the foreclosure proceeding by making the required showing in a direct proceeding. See *Woolley on Delaware Practice,* §§ 212, 213, 847, *et seq.; Arnold v. Sentinel Printing Co.,* 2 *Boyce* 177, 77 *A.* 966. Moreover, he may have exercised his equity of redemption. Having failed to do any of these things, he may not now be heard to complain in a collateral proceeding, seventeen years later, regarding technical defects and irregularities of the Sheriff's return.

It is concluded that the judgment in the foreclosure proceeding may not be declared void for want of jurisdiction over the Land Company.

### III. *The Validity of the Mortgage Obligation*

The defendants seek to impeach the mortgage foreclosure upon which the plaintiff's title depends by relitigating

in this proceeding the validity of the mortgage obligation. The defendants seek to prove in this case that the mortgage of 1908 was a nullity because (a) it was given without consideration; (b) it was not duly authorized by the directors of the Land Company; (c)ʼ the assignment of the mortgage was invalid; and (d) the mortgage obligation had been paid. The defendants thus seek to try the merits of the mortgage foreclosure action in this collateral proceeding. Of course, they cannot do this and any evidence along these lines must be held to be immaterial and irrelevant.

The defendants succeeded to the title which had been held by the Land Company and, at the time of the foreclosure proceeding, they were the terre-tenants. Under our practice, a mortgage foreclosure proceeding is brought against the original mortgagor, whether he continues to be the owner or not, and the present owner of the mortgaged premises is not a necessary party defendant in the foreclosure proceeding. In this jurisdiction, all persons acquiring title to mortgaged property are liable to be divested by a sale and conveyance under *scire facias sur* mortgage proceedings brought against the original mortgagor alone. See *Woolley on Delaware Practice*, § 1360; *Seals v. Chadwick*, 2 *Penn.* 381, 45 *A.* 718.

In the instant case, therefore, the defendants had the usual and ordinary opportunity to defend upon the merits in the foreclosure action and they were not excused from making their defense directly in that proceeding by reason of the fact that they were not joined and served as parties defendant. As terre-tenants at the time of the mortgage foreclosure, the defendants were obliged to litigate the validity of the mortgage obligation seventeen years ago. They may not now litigate those issues in this collateral proceeding. See *Hartman v. Ogborn*, 54 *Pa.* 120; *Blythe v. Richards*, 10 *Serg. & R., Pa.*, 261, 13 *Am. Dec.* 672.

Moreover, as has been indicated above, the defendants succeeded to all of the right, title and interest of the Land Company in the property. There being a "successive relation-

ship to the same right of property", the defendants were in privity with the Land Company, defendant in the foreclosure action. See *Huard v. Pion,* 149 *Me.* 67, 98 *A.* 2d 261; *Hudson Transit Corporation v. Antonucci,* 137 *N. J. L.* 704, 61 *A.* 2d 180, 4 *A. L. R.* 2d 1374; *Baroutsis v. Gregory,* 154 *Pa. Super.* 136, 35 *A.* 2d 559. As "privies in estate" of the mortgagor, the defendants are bound by the judgment in the foreclosure proceeding. That judgment is now conclusive upon them and they may not attempt a collateral impeachment of it in this case. See 37 *Am. Jur.* "Mortgages" §§ 549, 607.

There must be an end to litigation.

\* \* \* \* \* \*

I have considered the various other contentions of the defendants including the arguments that the plaintiff in an ejectment action must prevail upon the strength of his own title and that a mandamus proceeding was not proper in the *Derrickson* case for the purpose of trying the issue of title to land. I find none of these contentions of sufficient substance to alter the above conclusions or to change the result that must flow therefrom.

There appears to be no genuine issue as to any material fact and I am of the opinion that the plaintiff is entitled to judgment as a matter of law.

Accordingly, an Order in accordance with the foregoing, granting the plaintiff's motion for summary judgment, may be submitted on notice.