**Mary A. INGERSOLL, Frederick P. Shappell, Wayne D. Suiter, Robert R. Moneymaker, and R. E. Dolman, Plaintiffs Below, Appellants,**

**v.**

**ROLLINS BROADCASTING OF DELAWARE, INC. and Board of Adjustment of New Castle County, Defendants Below, Appellees.**

Supreme Court of Delaware.

July 7, 1970.

Reargument Denied July 29, 1970.

William Prickett, of Prickett, Ward, Burt & Sanders, Wilmington, for plaintiffs below, appellants.

Courtney H. Cummings, Jr., of Killoran & Van Brunt, Wilmington, for Rollins Broadcasting of Delaware, Inc., defendant below, appellee.

No appearance for Board of Adjustment of New Castle County.

WOLCOTT, Chief Justice, and CAREY and HERRMANN, JJ., sitting.

CAREY, Justice:

This is an appeal from a judgment of the Superior Court affirming the grant of a special zoning exception by the New Castle County Board of Adjustment to construct a television broadcasting tower 300 feet high in a residential (R–2) district. The appellants are the owners of property near the proposed location. The appellees are Rollins Broadcasting of Delaware, Inc. (Rollins), and the Board of Adjustment of New Castle County. The appellants have charged error in several respects, but our decision on one of these issues renders the others moot. The issue we pass upon is whether the Enrolled Bill doctrine applies to ordinances adopted by the County Council of New Castle County. The answer must be in the affirmative.

Rollins previously applied for a permit to erect a tower at this same location. Permission was granted by the Board of Adjustment, whose decision was reversed on appeal because of the inadequacy of evidence to justify the exception. Rollins Broadcasting of Del., Inc. v. Hollingsworth, et al., Del.Supr., 248 A.2d 143. Shortly thereafter, Rollins filed a new application. In the meantime, the County Council had adopted an amendment to its zoning code with respect to R–2 districts. This amendment, as originally authenticat-

ed and recorded, prohibited the Board of Adjustment from granting a permit for a television broadcasting tower in any R–2 district. Accordingly, when Rollins' new application came before the Board, the appellants herein moved to dismiss. The Board, however, permitted Rollins to introduce evidence* that the ordinance which the Council had actually adopted did not bar the Board from granting this permit. The Board thereupon heard the evidence offered by both sides on the merits and granted the permit.

In Superior Court, the appellants contended that the Enrolled Bill doctrine was applicable and that no evidence was admissible to prove the language of the ordinance other than the enrolled ordinance itself. The Court below disagreed, holding that the doctrine did not apply to a county government; it did, however, limit extraneous evidence to "official records such as minutes and journals."

■ Prior to 1897, the Enrolled Bill doctrine had been applied in Delaware to legislation of the General Assembly. In 1910, however, in Rash v. Allen, Del., 1 Boyce 444, 76 A. 370, with strong dissent from two Judges, the Superior Court *in banc* held that the Constitution of 1897 had changed that rule and required the application of the Journal Entry rule. This holding was based upon a Constitutional provision that no bill shall pass either House unless the final vote shall have been taken by "yeas" and "nays" and the names of the members voting for and against the same shall be entered on the journals. The Court made it quite plain, however, that evidence to vary or contradict the journal entries would not be received. Little time was lost in altering this provision of the Constitution so as to eliminate the words which required the Court to observe the Journal Entry doctrine. The decision in the *Rash* case was issued in 1910; the

---

* This evidence included the Council's minutes and journal, an affidavit of Council's Clerk, certain recommendations made by the Department of Planning, tape recordings of certain meetings of Council, and a letter from Council's attorney.

amendment was adopted in 1913. 27 L. of D. 3. Since that time, the law of this State has been that the Enrolled Bill doctrine is applicable to acts of the Legislature. State ex rel. Craven v. Schorr, Del. Supr., 131 A.2d 158; Opinion of the Justices, Del.Supr., 232 A.2d 103. Under the rule, no evidence other than the enrolled bill itself is admissible to prove its contents, at least in the absence of fraud.

■ The present charter of New Castle County, T. 9 Del.C. Ch. 11, became effective on January 3, 1967. Its object was to grant "home rule" to the county. It gave the County Council extremely broad powers; § 1101 confers all powers which it would be competent for the General Assembly to grant by specific enumeration and which are not denied by statute, but does not include the power to define and provide for the punishment of felonies. The government created consists of an elected County Council of seven members, one of whom is elected at large and serves as President. There is also elected a County Executive, who is the chief administrative officer. All acts which have the force of law must be by ordinance. Any proposed ordinance must be advertised with a notice setting out the time and place for a public hearing. After such public hearing, the Council may adopt the ordinance with or without amendments or reject it, except that if it is amended as to any matter of substance which is not embraced in its title, the Council may not adopt it without going through the procedures required for a newly introduced ordinance. Upon the passage of an ordinance, it shall be signed by the President and presented to the County Executive. To become effective, it must be approved by the County Executive or passed over his veto, unless he fails to act within ten days, in which case it becomes effective as if he had signed it.

Section 1161 of the charter is entitled "Authentication, recording, codification, and reproduction of ordinances." This section provides that the clerk of Council shall authenticate by his signature, and record in full in a properly indexed book kept for that purpose, all ordinances and resolutions adopted by the Council. Section 1150 requires that the Council shall provide for keeping a journal of its proceedings which shall be a public record. Voting shall be by roll call and the "ayes" and "nays" shall be recorded in the journal. Nothing in the charter itself requires the keeping of a minute book, but we understand that Council itself has provided for one.

The foregoing requirements laid down for the adoption of ordinances correspond almost precisely with the procedures set forth in the State Constitution governing acts of the Legislature, with the exception of the requirement concerning authentication. All statutes adopted by the General Assembly must be presented to the Governor and do not become law without his signature except when passed over his veto, unless it should become law by virtue of his failure to act within ten days, if the General Assembly has not adjourned. No bill shall pass either House unless the final vote has been taken by "yeas" and "nays." Each House must keep a journal of its proceedings, in which the names of the members voting for and against any bills shall be entered, and the "yeas" and "nays" of the members shall be entered at the desire of any member. By statute, T. 29 Del.C. Ch. 9, very specific rules are laid down for the signing and authentication of legislative acts.

We believe that the similarity between the State procedures and those laid down in the County Charter is something more than mere coincidence. It seems reasonable to assume that the State lawmaking authorities, realizing the broad extent of the powers being delegated to the County, intended to require the County to follow authenticating and recording procedures as nearly as possible like those which govern the General Assembly itself. It is likewise reasonable to assume they would expect the same principles of law to be applied by the

Courts to County ordinances as are applied to State statutes. Had a different result been intended, we would have expected to find something in the Charter to show such intent.

It may or may not be true, as Rollins suggests, that the Enrolled Bill doctrine is not customarily applied to municipal governments, Cf. 6 McQuillin on Municipal Corporations § 22.37; even if it be correct, we know of no reason why the Legislature cannot impose such a rule upon a city or county if it sees fit to do so. That course would seem to be an act of wisdom in the case of this home rule charter granting unusually broad powers and affecting a large percentage of the State's population. We are not here dealing with a small incorporated village or town.

Some cases suggest that the reason for the Enrolled Bill doctrine is that the Courts should not make light of a solemn act of the legislative body, and that due respect for the lawmaking branch of government necessitates this rule. Field v. Clark, 143 U.S. 649, 12 S.Ct. 495, 36 L.Ed. 294. We suggest that an equally important reason is the need for having a specific place to which a citizen may turn to find out precisely what the legislative body has done, and upon which he may rely. It has been said that it is almost as important that the law be certain as it is that the law be right. Abbott Supply Company v. Shockley, 11 Terry 261, 128 A.2d 794; State ex rel. Buckson v. Pennsylvania Railroad Company, Del.Supr., 228 A.2d 587. That need exists with respect to New Castle County ordinances as well as to state statutes. The citizen should be able to rely upon the official record required by law to be kept for this very purpose. He ought not to be obliged, either personally or through his counsel, to make a "title search" of the journal, the minutes, and other records of the county, or to contact the individual officers to find out whether the official record is correct; nor should he have to wait for the Council to approve its minutes at some later date before he can act upon

the assumption that the official record is correct. It seems only fair to require (as we think the Legislature has done) the Council officials to make sure that the document which they authenticate is the one actually adopted.

Rollins has cited certain cases wherein zoning regulations have been attacked for failure to follow prescribed procedures. They have no bearing upon the question we are now considering. The Enrolled Bill doctrine has reference only to the question of what evidence is admissible to prove the adoption and the language of an enactment; it has nothing to do with the interpretation or application of an act or ordinance or the compliance with any constitutional or statutory prerequisite to its consideration by the lawmakers.

■ We are told that the Council attempted to alter this ordinance by amending the minutes. That attempt was a nullity. The ordinance by that time had become a part of the county law and could be altered only by the adoption of another ordinance pursuant to the Charter. Cf. City of Paxton v. Bogardus, 201 Ill. 628, 66 N.E. 853.

Since the Board of Adjustment had no power, under the ordinance as proven, to grant the requested permit at the time it was granted, its action was a nullity. The judgment below must accordingly be reversed.

## ON MOTION FOR REARGUMENT

■ The appellee's motion for reargument is denied. Certain issues are raised which were not presented to the Court below or to us in the original argument; they come too late. The other points have already been considered.

■ After the application was filed, appellant's counsel, without prior permission of the Court, filed an answer, giving reasons why reargument should be denied. This procedure is not justified under Su-

preme Court Rule 13, Del.C.Ann., which makes no provision for such an answer. When counsel has what he considers good reasons for filing an answer, he should first seek permission to do so.

The motion is denied.