**WILMINGTON SAVINGS FUND SOCIETY,**
Plaintiff Below, Appellant,

v.

**John W. GREEN, State Bank Commissioner of the State of Delaware, Defendant Below, Appellee.**

Supreme Court of Delaware.

Feb. 4, 1972.

George Tyler Coulson, and Paul P. Welsh, of Morris, Nichols, Arsht & Tunnell, Wilmington, for appellant.

Robert W. Ball, Deputy Atty. Gen., Wilmington, for appellee.

Rodman Ward, Jr., and Eduard F. vonWettberg, 3rd, Wilmington, for Delaware Bankers Assn., amicus curiae.

WOLCOTT, C. J., and CAREY and HERRMANN, JJ., sitting.

WOLCOTT, Chief Justice:

This is an appeal from the denial by the State Bank Commissioner to the Wilmington Savings Fund Society (WSFS) of a certificate of authority to open a branch office in Millsboro, Delaware. Summary judgment was denied to WSFS.

WSFS was created by a special act of the General Assembly in 1832. 8 Laws Ch. 101. Its charter has been amended from

time to time by a two-thirds vote of the Legislature as required by Art. IX, § 1 of the Delaware Constitution, Del.C.Ann. In 1929 its charter was amended to provide that WSFS " * * * may establish such branch offices at such places as it may deem advantageous." 36 Laws, Ch. 298.

In 1959, 5 Del.C. § 933 was enacted which provided that a branch office of a bank may be opened only upon the authority of the State Bank Commissioner. The enacting clause of § 933 did not manifest a concurrence of two-thirds of the assembly members. The application of § 933 to WSFS is at the center of this controversy.

WSFS contends that § 933 does not give the State Bank Commissioner power to grant or deny a certificate of authority to WSFS. It urges that it is authorized to open branches at its own volition, and at any location pursuant to the standard of the 1929 amendment to its charter. The resolution of this issue is dispositive of all the questions raised in this appeal.

WSFS argues that the statute does not manifest on its face that it was approved by a two-thirds vote of the General Assembly; that the Enrolled Bill Doctrine prevents the court from going behind the face of the bill to determine if it received the required vote, and that, therefore, a conclusive presumption is raised that the statute did not receive the vote required to validly amend the charter of the bank.

The Bank Commissioner and the *Amicus Curiae* dispute WSFS' interpretation of the Enrolled Bill Doctrine. They respond that under the circumstances at hand the doctrine does not raise a conclusive presumption regarding the bill, but rather raises a rebuttable presumption under Delaware law that the statute did not receive the required vote. Consequently, they urge that this court has the power to look behind the face of the statute to the Senate and House Journals to determine if in fact the statute did receive a two-thirds vote. Those Journals in fact show that § 933 passed both Houses unanimously.

■ We are asked to determine whether 5 Del.C. § 933 validly amended the charter of WSFS which would require the approval of at least two-thirds of the voting members in each House of the General Assembly. The enacting clause of § 933 fails to recite that it passed by the requisite majority. Under such circumstances, a presumption is raised that the section received only a simple majority concurrence. Opinion of the Justices, 232 A.2d 103, 105 (Del.Supr.Ct.1967).

The issue is whether this court can consider the Senate and House Journals to rebut that presumption. The Enrolled Bill Doctrine has been said to be operative "where [a] failure of constitutional compliance in [an] enactment of statutes is *not* discoverable from the face of the Act itself but may be demonstrated by recourse to *the legislative journals * * *.*" 1 Sutherland, Statutory Construction § 1402 (1943). (Emphasis added). The argument that the presumption is conclusive is said to be historically founded on the respect in England for Parliamentary act, considered to be regal, and thus, in a sense, undisputable. This idea has been transposed to our system so that " * * * as the Legislature was an official branch of the government the court must indulge in every presumption that the legislative act was *valid.*" 1 Sutherland § 1403. (Emphasis added).

Sutherland's writing indicates that the doctrine comes into play when extrinsic evidence is used to attack the validity of an enrolled bill otherwise valid on its face. That is not the situation presently before us. Instead, we are here concerned with a bill which under the Delaware law is presumed to be invalid on its face for the purpose of qualifying as a valid amendment to the WSFS charter. In this respect the question is different from those cases in which the Enrolled Bill Doctrine is traditionally applicable. Indeed, it would appear that resort to this doctrine to uphold the invalidity of a bill is inapposite to those policies on which the doctrine has its

historical basis. To do so, we would certainly not be accepting a presumption that the act was valid. This fact makes this case distinguishable from those in which the Enrolled Bill Doctrine is traditionally applied.

*Opinion of the Justices*, supra, has been cited as authority for the application of the Enrolled Bill Doctrine in this case. In that case we said that the presumption that the bill did not receive more than a simple majority vote grew out of the long-established custom of reciting, where applicable, a concurrence of the constitutionally required vote in the enacting clause. Furthermore, we stated that the presumption's application to the case was required by the Enrolled Bill Doctrine. In light of the above discussion of the doctrine's applicability only to cases where statutes are invalid on their face, however, we feel that our decision in *Opinion of the Justices*, supra, must be modified to the extent that it applied the conclusive presumption of invalidity. The doctrine's historical basis was not founded in a context where statutes were presumed to be invalid and it should not, therefore, have been applied in that case.

We believe this conclusion is further supported by a close examination of other Delaware case law in this area. Prior to the acceptance of the doctrine, this State had adopted a Journal Entry Doctrine which required that "if constitutional compliance with mandatory provisions are not set forth in the record there is a conclusive presumption raised that the proper proceedings were not followed and thus the presumption is raised conclusively against the validity of the act." 1 Sutherland, supra, at § 1406. This presumably was the law in Delaware announced in Rash v. Allen, 1 Boyce 444, 76 A. 370 (1910). The court there found that under the Delaware Constitution certain "entries" were required to be made in legislative journals as a prerequisite to the validity of a bill. As a result of that finding, an otherwise valid law was struck down due to a defect in the compliance with these journal requirements. 1 Boyce at 492, 76 A. at 389. This policy did not stand long in Delaware. In 1913 the Constitution was amended to avoid this result.[1] The amendment no longer required entries as a prerequisite to validity of the law, but nevertheless, continued to require that such entries be made, apparently reflecting a policy that an otherwise valid statute was not to stand or fall for failure to comply with a ministerial duty of recording a "journal entry". The effect of this change in Delaware law was presumably to require that the State follow the Enrolled Bill Doctrine.

That doctrine has been adopted in several varying forms in this country. One variation, a Conclusive Presumption Rule, prohibits a court from considering any extrinsic evidence to invalidate an enrolled bill. See 1 Sutherland, § 1403. Another rule requires only a *prima facie* presumption of validity and permits the consideration of "clear, satisfactory and convincing" evidence to rebut the presumption. 1 Sutherland, § 1405. Little discussion in our case law has centered on which of

---

1. Prior to amendment, the Constitution read, in pertinent part, as follows: "No bill or joint resolution, except in relation to adjournment, shall pass either House unless the final vote shall have been taken by yeas and nays, and the names of the members voting for and against the same shall be entered on the journal, nor without the concurrence of a majority of all the members elected to each House."
In 1913, Article II, § 10 was amended to its present form:
"Each House shall keep a journal of its proceedings, and publish the same immediately after every session, except such parts as may require secrecy. The names of the members voting for and against any bill or joint resolution, except in relation to adjournment, shall on the final vote be entered on the journal; and the yeas and nays of the members on any question shall, at the desire of any member, be entered on the journal. No bill or joint resolution, except in relation to adjournment, shall pass either House unless the final vote shall have been taken by yeas and nays, nor without the concurrence of a majority of all the members elected to each House." (Amended 27 Del.Laws Ch. 1, approved Feb. 28, 1913).

these conflicting theories should be adopted in Delaware, although cogent arguments may be asserted as to which is the more sound.[2]

In State ex rel. Morford v. Emerson, 1 Terry 328, 10 A.2d 515 (Del.Supr.1939) aff'd Per Curiam 1 Terry 496, 14 A.2d 378 (Del.Supr.1940), the court found it unnecessary to reach a question which was raised regarding the effect of the 1913 amendment on the law of this State. In State ex rel. Craven v. Schorr, 11 Terry 365, 131 A.2d 158 (Del.Supr.1957), the issue was again raised. The law was argued to be invalid for lack of "legally sufficient legislative journals". Just as in the *Rash* case, the form or manner in which the journals were kept rather than the substance of what they contained was the alleged basis for the law's invalidity. Although the court expressed no opinion on this issue, it apparently interpreted the argument as an attempt to revive the Journal Entry Doctrine which was "effectively eliminated" by the 1913 amendment. Under these circumstances, the court reasoned, in dicta, that it could not go behind an enrolled bill to consider any evidence. 131 A.2d 162.

The court's conclusion was no doubt compelled in view of the 1913 amendment. It impliedly adopted the Enrolled Bill Doctrine, although the question of whether extrinsic evidence would ever be admitted was arguably left open. Moreover, none of these cases discuss any policy the court was attempting to enforce through the application of the doctrine. The issues involved *required only* its discussion in a summary manner. Later cases, citing *Schorr*, indicated that the State was committed to the Enrolled Bill Doctrine and

implied that a conclusive presumption was required. Opinion of the Justices, 232 A. 2d at 105 (modified above); Opinion of the Justices, 233 A.2d 59, 61 (Del.Supr. 1967.[3]

The most recent case involving the application of the doctrine, however, clearly required a conclusive presumption and discussed the policy underlying its decision. Ingersoll v. Rollins Broadcasting of Delaware, Inc., 269 A.2d 217 (Del.Supr.1970).[4] Citizen reliance on the correctness of an enrolled bill, thus avoiding the need for "title searches" through journals and other records to verify the bills' contents, was suggested as an important reason underlying the theory which required a conclusive presumption of validity. 269 A.2d at 220.

 The decisions reveal that Delaware has adopted the "conclusive presumption rule". Although the facts at hand present a similar set of circumstances, however, we do not believe that the rule must control here. We earlier concluded, considering the doctrine's historical basis for its existence, that the present facts did not create a situation where the doctrine was intended to apply. Similarly, we must now conclude, considering the policy announced in *Ingersoll* which attempts to disburden one from detailed record-searching to verify a statute's validity, that our facts do not create a situation intended to be guided by that rule. We think the undue burden feared in *Ingersoll* does not arise where one is alerted to a possible irregularity in the legislative process by a defect apparent on a statute's face. Such an error arguably leads one to the legislative journals in search of an explanation for the flaw or omission—a procedure not logically resulting from a reading of a statute

---

2. See 1 Sutherland, supra, §§ 1403, 1405; compare id. § 1403 n. 7 (1971 cum. supp.) with id. § 1405 n. 1 (1971 cum. supp.).

3. Due to the nature of the questions raised in those opinions, it was unnecessary for the Court to discuss the merits of the various theories.

4. Although the court was there considering the doctrine's application to a county government's enactment, it considered the same principles of law applicable in both county and state governments. 269 A.2d 219.

valid on its face. In short, in cases where a statute is defective on its face, we feel that the Enrolled Bill Doctrine does not apply fully. Furthermore, we believe the application of the conclusive presumption which here would require that we presume the statute invalid would not serve to fulfill either the policy reasons suggested in *Ingersoll* or traditionally urged for the rule's existence.

 We think the court is not being asked to apply the doctrine in the traditional sense, but rather to assert a hybrid theory which would require that an enrolled bill must stand or fall only on its own contents. Under such a theory, no recourse may be had to any extrinsic evidence, regardless of whether it appears from the face of the bill that it is valid or invalid. As previously mentioned, we do not think that should be the result where a bill appears to be invalid on its face. The Delaware Constitution requires that journals be kept and votes be recorded, although such a record is no longer a prerequisite to validity. Del.Const., Art. II, § 10. We see no reason to ignore the journals if they may establish by clear and convincing proof that the bill was valid and did, in fact, obtain the requisite majority. We are not holding that any or all extrinsic evidence is admissible, but rather that clear and convincing evidence established by constitutionally required journals may be admissible when the validity of a statute defective on its face is under consideration. We hold in this case that the court may consider the journals.

5 Del.C. § 933 was added by 52 Del. Laws, Ch. 58, effective June 2, 1959. The law originated in the One-hundred-and-twentieth General Assembly as Senate Bill 65 and was entitled as, "An Act to Amend Chapter 9, Title 5, Delaware Code Relating to Regulations Governing Business of Banks and Trust Companies."

The Senate Journal shows that on April 30, 1959, Senate Bill 65 was brought to a vote in the Senate, where it received 15 yeas and no nays, two senators being absent. Senate Journal, State of Delaware, 1959, pp. 148–149. The House Journal shows that on May 20, 1959, Senate Bill 65 was voted on in the House. There were 31 yeas, no nays and four members absent. House Journal, State of Delaware, 1959, p. 221.

These constitutionally required journals conclusively establish that the bill did in fact receive the requisite two-thirds majority, and that § 933 is valid and operative as an amendment to the WSFS charter. We therefore conclude that the Bank Commissioner does have authority over WSFS by virtue of § 933 to grant or deny certficate of authority to permit the establishment of branch offices.

This conclusion makes it unnecessary to consider other points made by the parties.

The Order in the Superior Court denying WSFS summary judgment is affirmed.