Frank E. ACIERNO, Plaintiff below, Appellant,

v.

Henry R. FOLSOM, Jr., Individually and as President of the New Castle County Council, et al., Defendants below, Appellees.

Supreme Court of Delaware.

Argued Dec. 9, 1974.

Decided March 14, 1975.

James M. Tunnell, Jr., David A. Drexler and James F. Waehler, Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiff below, appellant.

Joseph M. Bernstein, New Castle County Dept. of Law, Wilmington, for defendants below, appellees.

Before HERRMANN, C. J., and DUFFY and McNEILLY, JJ.

HERRMANN, Chief Justice:

In this case, the New Castle County Council disapproved the appellant's subdivision plan. The appeal is from the denial by the Court of Chancery of injunctive relief sought by the appellant. Two determinative questions are presented: (1) Did[1] the County Council have lawful authority to reject a subdivision plan approved by the Planning Board? and if not, (2) Was the appellant's subdivision plan approved by the Planning Board as a matter of law?

---

1. This case is governed by Subdivision Regulations in effect when the appellant's subdivision plan was being processed. Revised regulations have been promulgated since.

## I.

The basic facts, as to which the Trial Court found no dispute, and the contentions of the parties are stated at length in a reported opinion upon another facet of the case: see (Del.Ch.) 313 A.2d 904, aff'd 311 A.2d 512. Reference is made to the statement of facts and the contentions of the parties there set forth.

## II.

The decision from which this appeal is taken is not reported.

The Court below held that the County Council was authorized to "reach its own conclusion after its own deliberation and review of the record" and to reject a subdivision plan approved by the Planning Board; that, therefore, the "official tally of the votes at the Planning Board level" was irrelevant. Accordingly, the Court of Chancery denied the relief sought by the appellant by granting summary judgment in favor of the appellees. We must disagree.

## III.

The scope of review of the County Council on appeal to it regarding a subdivision plan was limited by Statute and Regulation which defined the role of the County Council in the regulatory scheme thereby established:

The first echelon in the administrative control of subdivisions in New Castle County was the Department of Planning. By 9 Del.C. § 1345, enacted as part of the Reorganization Act (9 Del.C. Ch. 11) and entitled "Legal Effect of Subdivision Regulations", the Department of Planning was vested with primary authority to approve subdivisions:

"All proposed subdivisions of land to be made after the adoption of regulations governing subdivision of land shall be submitted to the Department [of Planning] for approval for conformity to the subdivision regulations and no such proposed subdivision shall be made or recorded unless approved by the Department. * * *"

The enabling Statute (as amended by the Reorganization Act) provided for the proposal of subdivision regulations by the Department of Planning and approval thereof by the County Council. 9 Del.C. § 3003. The Statute prohibited the issuance of building or occupancy permits, or the selling of subdivided land, or the recording of plans except in accordance with the Subdivision Regulations. 9 Del.C. §§ 3005, 3006, 3007. The Subdivision Regulations thus duly adopted limited the scope of review of the Planning Board and the County Council over controversies involving subdivision plans.

As to the Planning Board:[2] Section 8.31 of the Subdivision Regulations provided:

"8.3 *Appeal*

"8.31. Any subdivider aggrieved by a finding, decision or recommendation of the Department may request and shall receive an opportunity to appear before the Planning Board to present additional relevant information and request reconsideration on the original finding, decision or recommendation."[3]

"Sec. 20–9. Appeals

"Any subdivider aggrieved by a finding, decision or recommendation of the Department may appeal such action to the Planning Board within thirty days after notification of such action by the Department. The Planning Board, acting in a judicial capacity, shall then hold a hearing on the matter, during which both the Appellant (subdivider) and Appellee (Department) shall be given an opportunity to present testimony supporting

---

2. The Planning Board consists of seven members appointed by the County Executive with the advice and consent of the Council. One is appointed Chairman and serves at the pleasure of the County Executive. 9 Del.C. § 1342. The Board was given power to grant variances (Reg. 8.2) and to propose revisions of the Regulations to the Council (Reg. 8.1).

3. Regulations Secs. 8.31 and 8.32 have been superseded by the present Regulations Sec. 20–9 which provides as follows:

And as to the County Council, § 8.32 of the Subdivision Regulations provided:

"8.32. If, after requesting the Planning Board to reconsider the denial of any Final Plan or Record Plan, a subdivider still feels that such action is unreasonable and causes him unjustifiable hardship, he may appear before the County Council to request a reconsideration of the denial of said Final Plan or Record Plan."

Several elements, governing appeals in subdivision plan matters, were clear on the face of the Regulations: (1) The Planning Board could only review upon application of a subdivider "aggrieved" by Department action; (2) County Council could review only a denial of approval by the Planning Board. If the Planning Board approved a subdivider's plan, the Department of Planning was given no right to appeal and the County Council was given no right of review; and in the absence thereof, the subdivision plan was forwarded to County Council for endorsement prior to recordation.

■ To summarize for the purposes of this case, we view the statutory and regulatory scheme controlling subdivision plans as follows: The Department of Planning was given the primary power to approve subdivision plans. (9 Del.C. § 1345). If there was an approval, there was no fur-

ther review. If, however, the Department disapproved a proposed plan, the "aggrieved" subdivider could appeal to the Planning Board which had the power to "reconsider" the matter and to approve or to affirm disapproval. (Regulation Sec. 8.31). If the Planning Board approved the plan, its decision was final and the Department Director was obliged to register its approval in accordance with the mandate of the Board; but if the Board also disapproved the plan, the disappointed subdivider had recourse on appeal to the County Council which, like the Planning Board, had the power to "reconsider" and to approve or to affirm the disapprovals. (Regulation Sec. 8.32). The County Council was not given the authority to disapprove an approved plan. Indeed, by necessary implication, such authority was denied to the County Council by the Regulation.

Upon the basis of the foregoing, we have concluded that the Trial Court erred in holding that the County Council was empowered upon appeal to reach its own conclusion, after review of the record, as to approval or disapproval of a subdivision plan, regardless of the action taken by the Planning Board; and that, therefore, the correct vote at the Board level need not be decided.

■ The Trial Court relied upon 9 Del. C. § 3007(a) [4] in support of its conclusion.

their respective points of view, to include any applicable new material not previously considered in the course of plan review by the Department, or other applicable material. * * *.

"Any subdivider aggrieved by a finding, decision or recommendation of the Planning Board under the above paragraph may appeal such action to County Council within thirty days after notification of such action by the Planning Board. The County Council, acting in a judicial capacity, shall then hold a hearing on the matter, during which both the Appellant (subdivider) and Appellee (Department) shall be given an opportunity to present testimony supporting their respective points of view, to include any applicable new material not previously considered in the course of plan review by the Department, any ap-

plicable new material not considered by the Planning Board in the course of the appeal hearing held under the above paragraph, or other applicable material. * * * *."

4. 9 Del.C. § 3007(a) provides:
"§ 3007. Recording unapproved plans; penalty
"(a) The Recorder of Deeds within the County shall not receive for filing any plan of land showing an arrangement of lots or parcels of lands, streets, easements or rights-of-way unless and until said plan shall have been submitted to, and approved by, the Commission and the county government pursuant to the regulations adopted under this chapter, and until each such approval shall have been endorsed in writing on said plan by the Chairman or the Executive Director of the Commission and the County Executive."

That 1965 Statute must be reconciled with the 1967 Reorganization Act and the Regulations duly promulgated thereunder. As thus reconciled, the requisite approval by the County Council of subdivision plans approved by the Planning Department, either initially or pursuant to the mandate of the Board, must be deemed to be a ministerial act. See State ex rel Rappa v. Buck, Del.Super., 275 A.2d 795 (1971).

The appellees contend that, by virtue of 9 Del.C. § 1345, the Planning Department had the sole and exclusive power and authority to approve a subdivision plan; that the Planning Board had consultive authority only under § 1343, and had no power to reverse a disapproval by the Planning Department;[5] that, therefore, the Trial Court did not err in ruling that it was not required to pass on the voting issues.

■ This argument disregards several persuasive factors: (1) The Regulations, duly promulgated under statutory authority, have the force and effect of statute; (2) Sec. 8.3 of the Regulations, providing for "reconsideration" by the Board of decisions of the Department unfavorable to an "aggrieved" subdivider, was entitled "Appeal"; and the word "appeal", when used in conjunction with administrative proceedings is deemed, unless otherwise indicated, to be used in its ordinary sense and meaning as when used in conjunction with judicial proceedings, including the power to reverse. See State ex rel Spurck v. Civil Service Board, 226 Minn. 240, 32 N.W.2d 574 (1948); 2 Am.Jur.2d "Administrative Law" § 546; Kelley v. Hopkinton Village Precinct, 108 N.H. 206, 231 A.2d 269 (1967); (3) the power of "reconsideration" by the Board of the decision of the Department would be meaningless without the power to reverse the decision of the Department; (4) without the power of re-

versal in the Board there would be no administrative provision for review of unlawful, arbitrary, or capricious decisions of the Department, a manifest purpose of the Statute and the Regulations;[6] (5) the obvious design and purpose of the Statutes and Regulations was to resolve administrative matters such as approval of plans at the Department or Board level, and to involve the busy Council in such matters only upon the application of an "aggrieved" subdivider who stood at the Council's door with a plan disapproved by both the Department and Board.

■ We conclude that under Regulations Secs. 8.31 and 8.32, an approval of the Planning Board was binding upon the Planning Department; that upon such approval the Director of the Department was obliged to certify that the plan was in conformity with the Regulations; and that upon such certification, the County Council was obliged, as a ministerial function, to register its approval for recordation purposes.

The foregoing conclusion is consistent with the concept that the Planning Board, appointed by the County Executive and confirmed by the County Council, and its Chairman, appointed by the County Executive and answerable directly to him, constitute an arm and agency of the Executive and the Council. This concept explains the obvious administrative scheme, spelled out by the Regulations, under which the Council has delegated to the Board the final decision if a subdivision plan is approved by it, reserving to itself in such case only the statutory ministerial function of approval, and involving itself further only if a subdivider is "aggrieved". Compare Great Western Savings Ass'n. v. City of Los Angeles, 31 Cal.App.3d 403, 107 Cal.Rptr. 359 (1973).

---

5. The appellees recognize that this argument could apply equally to the County Council if it had voted to approve the appellant's plan instead of voting to disapprove it. This would mean no administrative control whatsoever over the Department.

6. In this connection, especially noteworthy is the present Regulation Section 20–9 which provides that the Board acts "in a judicial capacity" in holding hearings upon appeals from decisions of the Department.

If the County Council finds this result unintended, its recourse is revision of its Regulations.

## IV.

The foregoing conclusion is also consistent with the concept of a procedure governed by specific rules and regulations, known to all concerned, in which uniformity and certainty exist. In Leon N. Weiner & Associates v. Carroll, Del.Supr., 276 A.2d 732, 735–736 (1971), in which the City Council of Dover overruled the Planning Commission's approval of the appellant's subdivision plan, this Court stated:

"There must be order and certainty in the law, especially with respect to real property. As has been often stated, it is almost as important that the law be settled as it is that the law be right, particularly where real property is involved. Abbott Supply Co. v. Shockley, Del. Super., [11 Terry 261] 128 A.2d 794, 798 (1956); State v. Pennsylvania Railroad Co., Del.Ch., 228 A.2d 587, 598 (1967). Property holders are entitled to know, with a reasonable degree of certainty, the legal rules and regulations, the legal processes and procedures, governing them in the use of their property. To the extent reasonably possible, the rights and obligations of a property holder under the law should be clear; and the consequences of a course of action, duly adopted and followed by him under existing law, should be predictable.

"The Land Subdivision Regulations constitute the basic body of existing law governing the present situation. The plaintiff is entitled to the orderly progression of deliberation and action by the Planning Commission prescribed by those Regulations. Any interference by the City Council, which obstructs action by the Planning Commission taken in compliance with the Regulations, is improper and unlawful and should be enjoined."

In accordance with that philosophy, which we confirm, and the conclusion we reach hereinabove, we must hold improper and unlawful the rejection of the appellant's plan by the County Council if the Planning Board had, in fact and in law, approved it.

## V.

In view of the foregoing, the question now before us is whether, under the facts and the law, there was approval of the plan by the Board. We think there was for the reason that the Chairman of the Board acted unlawfully in denying the application of the appellant that he disqualify himself and abstain from sitting in the case.

Further undisputed facts should be stated in connection with this facet of the case:

The second hearing before the Board was held November 21, 1972. Prior thereto, the appellant made written request to the Board that the Chairman, Dr. McCoy, disqualify himself and be precluded from acting as Chairman and from participating any further in the appellant's appeal to the Board.

This application was based upon Dr. McCoy's conduct at the prior hearing before the Council held on August 22, 1972 on the appellant's appeal from the first rejection of his plan by the Board. That conduct, upon the basis of which the appellant claimed bias and prejudice at the November hearing, consisted mainly of the following:

Dr. McCoy, then Chairman of the Board, apparently on his own initiative, attended the August meeting of the Council and spoke publicly in support of the Board's earlier decision from which that appeal was being taken. He took the initiative at the hearing by interrupting the appellant's attorney to state that he wished to "try to simplify procedures". He then proceeded to say to the Council that "the

question is really do you want a shopping center on this piece of property?" and "if you do not, then you might be giving up some of your legal tools to prevent it if you pass it on * * *." Dr. McCoy then proceeded to argue for the rejection of the appellant's plan and against a remand to the Department on various grounds and continued on this course even after it had become apparent that the Council favored a remand to the Department.[7]

Thus, after the remand and second disapproval by the Department, the appellant-proponent of the plan found himself appealing to a quasi-judicial Board chaired by an outspoken and antagonistic opponent of the plan who had conducted himself like an actual adversary in the earlier proceedings before the Council.

Having refused to disqualify himself, Dr. McCoy continued as Chairman of the Board throughout the November hearing

---

7. The following are some of the remarks made by Dr. McCoy at the Council meeting of August 22, 1972:

After a statement by the Director of Planning that the appellant's proposed use was not inconsistent with legislation adopted by County Council, Dr. McCoy argued:

"But there is a second, and there are two other ordinances in the past however: one was the ordinance for rezoning the University Plaza land and prior to that the change in the plan—comprehensive development plan—that you made to the University Plaza Shopping Center, to be put there, and if this shopping center goes, it will violate that particular pair of ordinances."

After question by a Councilman as to whether the comprehensive plan would have to be amended in order for Council to approve plaintiff's proposed shopping mall, Dr. McCoy stated:

"Very definitely. Particularly with respect to the part of the organization act that refers to streets. You have to, before you can approve any plan that has a street in it—it has to be in conformity with the comprehensive development plan."

In initiating a discussion of the significance of a written agreement between the State Highway Department and the appellant, Dr. McCoy asked the members of Council:

"Do you understand that the Highway Department approvals have been simply curb cut approvals and do not speak to the traffic impact on the situation."

During further discussion of the Highway Department agreement, Dr. McCoy argued:

"The traffic type situation we are talking about here is the type of thing that has happened on I–95 and Naamans' Road, with the split shopping center up there—regional type shopping center that is divided and split. The traffic impact is . . . [voice drops off, pipe banging]."

After appellant's counsel asked what harm would it do to the people of the community if the matter were remanded to the Department of Planning to consider new evidence, Dr. McCoy replied:

"If the Council does not have the power to turn down a record plan, it does irreparable harm."

After a statement by appellant's counsel that he could not understand why the request to go back to the Department of Planning was being resisted, Dr. McCoy stated:

"It is difficult to see how a revised plan would change the basic position, however, with respect to the comprehensive plan, or the traffic generation or even the site design."

After question by Councilman if he saw anything wrong with the Department's reconsidering the plan, Dr. McCoy said:

"If the decision before the Department is no different, I don't see why we don't decide it now, on the basic merits of it."

In answer to a question by a Councilman, as to why he saw the decision being no different, Dr. McCoy said:

"Well because * * * it appears that it would be extremely difficult, if not impossible, for any change in the plan to change the three points that the Department of Planning is opposing this plan on —particularly the Comprehensive Development Plan. It would take an act of Council to change that Plan."

And, during the continuing discussion with the Councilman as to why the plan should not be remanded to the Department of Planning, Dr. McCoy commented:

" * * * the traffic impact would be severe.

      *    *    *    *    *

" * * * but I doubt that the second could be taken care of—that the traffic impact could be taken care of.

    *    *    *    *    *

"Because the study done by the State Highway Department and by an independent consultant both indicate that the placement of the Center here would cause the traffic in the area to greatly exceed not only the present, but the future proposed capacity of the road system."

and subsequent proceedings by the Board. The hearing was held on November 21 and was attended throughout by Board member Joseph P. Johnson. After the hearing, the Board (including Mr. Johnson) retired to consider the issues before it. By reason of the withdrawal of the County Attorney,[8] the Board reserved decision and adjourned the proceedings to obtain legal advice. The Board reconvened on December 12, 1972 to decide the appeal. Mr. Johnson could not be present because, as he stated in a letter filed with the Board on December 14, he had a long-standing doctor's appointment which he felt compelled to keep because he had been ill for the 24-hour period prior to the Board meeting. On December 12, in Mr. Johnson's absence, the members of the Board voted: 6–0 to overrule the Department on the Comprehensive Development Plan question; 4–2 to overrule the Department on the internal design question; and 3–3 on the traffic impact question. Thereafter, a written "Decision of Appeal" was issued, stating:

"The Board having evenly divided on the question of whether or not to sustain the decision of the Department disapproving the Revised Final Plan on the basis of traffic impact, the decision of the Department stands."

In his letter filed with the Board on December 14, Mr. Johnson discussed at length each of the three questions before the Board and asked to have his vote recorded in favor of overruling the Department on all three questions. However, without consulting the other members of the Board, Dr. McCoy rejected Mr. Johnson's request and ignored his vote upon the basis of the following By-Law of the Board:

"For the purposes of conducting a business meeting at least four members of the Board shall be present. A motion is carried by the affirmative vote of a simple majority, except that a motion involving action by County Council and/or County Executive shall be carried by the affirmative vote of at least four members of the Board. Members must be present to vote on a motion."

We are of the opinion that, under the circumstances of this case, Dr. McCoy acted unlawfully by participating in the second appeal to the Board and should have disqualified himself therefrom. His failure to do so deprived the appellant of due process. He and the Board were acting in a quasi-judicial capacity. A public officer acting in a quasi-judicial capacity is disqualified to sit in a proceeding in which there is a controverted issue as to which he has publicly expressed a pre-conceived view, bias, or prejudice. Such officer must disqualify himself if he "has prejudged the case or has given a reasonable appearance of having prejudged it." Kennecott Copper Corporation v. F. T. C. (10 Cir.) 467 F.2d 67, 80 (1972). It is fundamental that a quasi-judicial tribunal, like a court, must not only be fair, it must appear to be fair. American Cyanamid Company v. F. T. C. (6 Cir.) 363 F.2d 757 (1966).

Public expressions regarding a pending proceeding, which may reasonably lead to the conclusion that a quasi-judicial officer has prejudged the issue as to which he is to sit in judgment, cannot be approved. Such expressions, like a conflict of interest, tend "to weaken public confidence and to undermine the sense of security of individual rights which the property owner must feel assured will always exist * * *." See Josephson v. Planning Board of the City of Stamford, Conn. Supr.Ct. of Errors, 151 Conn. 489, 199 A. 2d 690, 692 (1964).

In Texaco v. F. T. C., 118 U.S.App.D.C. 366, 336 F.2d 754, 760 (1964), the applica-

---

8. The County Attorney stated as his reasons: "I would like to state it is my position as head of the Department of Law that the County Attorney or anyone on his staff cannot advise the Board in the same proceeding when it is representing the Department of Planning. The Board is sitting as a judicial body on an appeal. I'm representing the Department, and I am their attorney, and I can't represent both."

ble rationale was stated in due process terms as follows:

"* * * [A]n administrative hearing * * * must be attended, not only with every element of fairness, but with the very appearance of complete fairness. Only thus can the tribunal conducting a quasi-adjudicatory proceeding meet the basic requirement of due process. [Amos Treat & Co. v. S. E. C. [113 U.S.App.D.C. 100], 306 F.2d 260, 267 (1962)]."

Similarly, the Fifth Circuit Court of Appeals expressed the due process considerations as follows in N. L. R. B. v. Phelps, (5 Cir.) 136 F.2d 562, 563 (1943):

"* * * a fair trial by an unbiased and non-partisan trier of the facts is of the essence of the adjudicatory process as well when the judging is done in an administrative proceeding by an administrative functionary as well as when it is done in a court by a judge. Indeed, if there is any difference, the rigidity of the requirement that the trier be impartial and unconcerned in the result applies more strictly to an administrative adjudication where many of the safeguards which have been thrown around court proceedings have, in the interest of expedition and a supposed administrative efficiency been relaxed. Nor will the fact that an examination of the record shows that there was evidence which would support the judgment, at all save a trial from the charge of unfairness, for when the fault of bias and prejudice in a judge first rears its ugly head, its effect remains throughout the whole proceedings. Once partiality appears, and particularly when, though challenged, it is unrelieved against, it taints and vitiates all of the proceedings, and no judgment based upon them may stand."

See also Lage v. Zoning Board of Appeals of Town of Madison, 148 Conn. 597, 172 A.2d 911 (1961); Barbara Realty Company v. Zoning Board of Review of the City of Cranson, 85 R.I. 152, 128 A.2d 342 (1957).

Accordingly, we hold that Dr. McCoy's refusal to disqualify himself, thus forcing a tie-vote on the one issue which prevented the appellant from obtaining approval of his plan, was unlawful as constituting deprivation of due process.

The result is that the vote of the Board on the traffic issue should be counted as 3–2, thus approving the plan and reversing the Department.

*    *    *    *    *    *

We do not reach other grounds of this appeal.

For the above reasons, the judgment below must be reversed and the cause remanded for further proceedings consistent herewith.