

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-10-1994

# Acierno v. New Castle Co.

Precedential or Non-Precedential:

Docket 94-7134

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Acierno v. New Castle Co." (1994). *1994 Decisions.* Paper 183.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/183

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————

No. 94-7134

————————

FRANK E. ACIERNO,
                    Appellee

v.

NEW CASTLE COUNTY,
                    Appellant

————————

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 93-cv-00579)

————————

Argued:  June 24, 1994

PRESENT:  BECKER and HUTCHINSON, <u>Circuit Judges</u>,
          and PADOVA, <u>District Judge</u>*

(Filed November 10, 1994)

————————

Collins J. Seitz, Jr., Esquire        (Argued)
N. Richard Powers, Esquire
Connolly, Bove, Lodge & Hutz
1220 Market Building
P.O. Box 2207
Wilmington, DE   19899
          Attorneys for Appellant

————————

*  Hon. John R. Padova, United States District Judge for the

Eastern District of Pennsylvania, sitting by designation.

Thomas S. Neuberger, Esquire          (Argued)
Thomas S. Neuberger, P.A.
Suite 702
200 West Ninth Street
Ninth Street Plaza
Wilmington, DE   19801-1646

        and

John J. Yannacone, Esquire          (Argued)
Yannacone, Fay, Baldo & Daly
Suite 107
200 East State Street
Media, PA      19063
          Attorneys for Appellee

_____

OPINION OF THE COURT
_____


HUTCHINSON, Circuit Judge.


This appeal presents yet another dispute between real estate developer Frank Acierno ("Acierno") and New Castle County, Delaware ("the County") over Acierno's commercial development plans for land in the County.  The underlying action is Acierno's request for declaratory and injunctive relief and compensatory and punitive damages for the County's alleged violations of the Constitution and laws of the United States and 42 U.S.C.A. § 1983 (West 1994).[1]  Presently before us is the County's appeal from an

_____

[1].  42 U.S.C.A. § 1983 provides, in relevant part:

> Every person who, under color of [law],
> subjects, or causes to be subjected, any
> . . . person . . . to the deprivation of any
> rights, privileges, or immunities secured by
> the Constitution and laws, shall be liable to
> the party injured . . . .

order entered by the United States District Court for the District of Delaware granting Acierno's motion for a mandatory preliminary injunction directing the County to issue Acierno a building permit for development of a shopping mall. The preliminary injunction also enjoins and restrains the County from interfering with Acierno's right to develop the parcel in question as a shopping mall.

In issuing its preliminary injunction, the district court held that Acierno established a substantial likelihood that the County's actions interfered with Acierno's Fourteenth Amendment property interests and his liberty interest to conduct his business as a real estate developer. The district court also concluded that Acierno would suffer irreparable harm unless the County was compelled to issue the building permit and halt its interference with Acierno's development. Finally, the court concluded that neither potential hardship to the County nor the public interest outweighed the benefits of issuing the preliminary injunction.

On appeal, the County argues Acierno failed to show he will be irreparably harmed unless a preliminary injunction issues against the County. We agree. A primary purpose of a preliminary injunction is maintenance of the status quo until a decision on the merits of a case is rendered. A mandatory preliminary injunction compelling issuance of a building permit fundamentally alters the status quo. There is no evidence in this record to show that a delay in issuance of the building permit until this case can be decided on its merits would cause

irreparable harm to Acierno. We will therefore reverse the district court's order entering this mandatory preliminary injunction against the County.[2]

## I. Factual & Procedural History

### A. General Factual Background

In 1971 Acierno was a long term lessor of a large part of some forty acres of land situated in New Castle County, Delaware near the intersection of Interstate Highway 95 and State Route 273. This forty acre parcel was zoned M-1, Manufacturing, and the County's zoning ordinance then in effect permitted commercial development in an M-1 manufacturing zone.[3] Acierno also owned an adjacent smaller parcel of land zoned C-2, Commercial, a portion of which is directly adjacent to Route 273. These two parcels comprise the property ("the Property").

In 1971, County planning law required developers to file an "exploratory sketch plan" before the County would finally approve a subdivision plan. On May 11, 1971, Acierno filed an "exploratory sketch plan" with the County Department of Planning

---

[2]. On appeal, the County also challenges the district court's conclusions that Acierno demonstrated a likelihood of success on his procedural and substantive due process claims. We do not decide these issues because of our conclusion that Acierno failed to show irreparable harm.

[3]. Zoning theory once took a hierarchial view of use zones. In the hierarchy, a manufacturing use usually ranked below a commercial use. The theory thus resulted in mixed uses within a single use zone. It has been generally displaced because such mixed uses have come into disfavor among planners and many of the communities they serve.

("the Planning Department") proposing development of an enclosed shopping mall on the Property. On October 8, 1971, in accordance with County regulations, Acierno submitted a more detailed "preliminary-tentative building plan." It described the enclosed mall as located entirely on the larger, forty acre portion of the Property zoned M-1. On October 22, 1971, the Planning Department disapproved Acierno's preliminary-tentative plan.[4]

On November 16, 1971, the New Castle County Council ("County Council") adopted an amendment to section 23-34 of the County Zoning Code prohibiting the commercial uses previously allowed in an M-1 Manufacturing zone. Before this amendment was adopted, Acierno requested the County's Planning Board ("Planning Board")[5] to hold an expedited special meeting to reconsider Acierno's preliminary-tentative plan. At this meeting on November 8, 1971, the Planning Board reversed the Planning Department and approved Acierno's preliminary-tentative plan.

On January 24, 1972, Acierno filed a final plan ("Plan") for his shopping center with the Planning Department but, on February 24, 1972, the Planning Department voted to

---

[4]. The Planning Department found that the proposed plan was inconsistent with the County's comprehensive plan, would create adverse traffic congestion and had an unsuitable internal design.

[5]. Under Delaware law pertaining specifically to New Castle County, the Planning Department initially reviews subdivision proposals. Del. Code Ann. tit. 9, § 1345 (1989). A developer has a right of appeal from an adverse decision of the Planning Department to the Planning Board. New Castle County Subdivision Regulations § 8.31; see Acierno v. Folsom, 337 A.2d 309, 311 (1975). The Planning Board consists of seven members appointed by the County Executive with the advice and consent of the County's attorney. Del. Code Ann. tit. 9, § 1342 (1989).

reject the final plan (1) because it conflicted with the general comprehensive development plan adopted for the County, (2) because the shape of the tract in issue made it unsuitable for the construction of a shopping center and (3) because of the impact of the increased traffic the proposed shopping center would bring. Acierno appealed but this time, on April 26, 1972, the Planning Board affirmed the Planning Department's rejection. See Acierno v. Folsom, 313 A.2d 904, 905 (Del. Ch. 1973), aff'd 311 A.2d 512 (Del. 1973).

A series of administrative and judicial appeals followed and, during a further hearing before the Planning Board, Board members voted as follows:

> (1) 6 to 0 in favor of Acierno on the incompatibility of the Plan with the County's comprehensive development plan;
>
> (2) 4 to 2 in favor of Acierno on the issue of unsuitable internal design of the project; and
>
> (3) 3 to 3 to sustain Planning's rejection of Acierno's Plan because that the proposed development would have an adverse effect on vehicular traffic in the area.

Id. at 905-06. A member of the Planning Board who was absent from this hearing later advised the Chairman of the Planning Board that he would have voted to overrule the Planning Department on all three resolutions if he had been present. See id. at 906. County Council nevertheless affirmed the Planning Board's decision on January 9, 1973. Id.

On March 14, 1975, however, the Delaware Supreme Court ordered County Council to approve and file Acierno's Plan. See Acierno v. Folsom, 337 A.2d 309, 317 (Del. 1975) (reversing unreported Delaware Court of Chancery order granting summary judgment to County). The supreme court first held that "an approval of the Planning Board was binding upon the Planning Department . . . and that . . . the County Council was obliged, as a ministerial function, to register its approval . . . ." Id. at 313. It also concluded that the Chairman of the Planning Board acted unlawfully in failing to recuse himself during the vote because of his apparent bias and prejudice towards Acierno and accordingly refused to count the Chairman's vote. Id. at 316. This changed the vote on the effect of increased traffic, the only issue which had gone against Acierno, to 3-2 in his favor. Id. at 317. The state's highest court therefore held that a majority of the Planning Board members properly voting had approved Acierno's proposed development and County Council was bound by this decision. Id. In compliance, County Council approved Acierno's Plan on October 28, 1975.

Almost twelve years later, in September of 1987, Acierno submitted a revised subdivision plan ("Revised Plan") to the Planning Department.[6] In it he proposed to: (1) subdivide the Property into three parcels; (2) change building locations and sizes to accommodate the present market; and (3) correct drafting errors along some boundary courses.

_____
[6]. In the early 1980's, Acierno purchased the forty acre parcel, which he had previously leased.

In a memorandum dated January 26, 1988, Charles D. McCombs II of the Planning Department directed Acierno's engineers to "[p]rovide a note referencing previous court action that permitted commercial development in the M–1 zoning district[]" on the Revised Plan. Appendix ("App.") at 335. They did so and on February 25, 1988, County Planning Director Wayne Grafton ("Grafton") approved the Revised Plan for recording purposes. On May 15, 1988, Grafton approved development of a "Hampton Inn" on the portion of the Property zoned M–1.

In November of 1988, Acierno submitted a revised subdivision plan amending the Revised Plan ("Revised Plan II"). Revised Plan II stated its purpose was to "'revise buildings & parking for buildings 1, 2 & 3' and to 'correct drafting errors along some boundary courses.'" App. at 336. Otherwise, it was consistent with Revised Plan I. On March 7, 1989, Grafton approved Revised Plan II.[7]

---

[7]. On April 4, 1989, following Grafton's approval of Revised Plan II, the Department of Public Works notified Acierno's engineers that it had approved facility support plans for a McDonald's which Acierno planned to locate on the part of the Property zoned for commercial use. On April 20, 1989, the Delaware Department of Transportation ("DELDOT") approved a permit for a commercial entrance to the Property at Route 273 presumably in connection with the plans for the McDonald's.

B.   The County's Conduct Leading to the Present Action

On April 18, 1991, County Attorney Michael Mitchell ("Mitchell") sent a memorandum to David J. Biloon ("Biloon"), Chief, Development and Licensing Division, Department of Public Works, New Castle County.  Mitchell's memorandum stated that he had reviewed the Delaware Chancery and Supreme Court opinions in the initial litigation in the mid-1970's over development of the Property, as well as a copy of the original Plan, the Revised Plan, and Revised Plan II.  Attorney Mitchell's memorandum concluded that most of the Property was not zoned for retail use, stating:

> "[N]o building permit should be issued for any construction on this site until extensive review and consultation between the Division of Development and Licensing, Department of Planning and Department of Law is initiated and concluded concerning any proposed use. Given the types of tenants that he has approached; i.e., the movie theater chain, it is clear that Mr. Acierno intends to initiate a use of the property that is not in conformity with the New Castle Zoning Code.
>
> In order to implement this directive, a general hold should be placed on any building permits that could be issued for this site. If that cannot be accomplished, all plan examiners and other officials involved in the building permit process should be advised of this situation and ordered to report any application for a building permit directly to you.  If Mr. Acierno applies for a Building Permit for the 273 Mall, please contact this Department so that the review discussed above may be initiated."

<u>Acierno v. New Castle County</u>, No. 93-579-SLR, 1994 U.S. Dist.
LEXIS 1683, at *34-35 (D. Del. Feb. 11, 1994) (emphasis added and
emphasis in original deleted).

On May 3, 1991, Biloon circulated a memo within the
County's Division of Development & Licensing which stated:

> "Please inform your respective staffs to keep
> an eye out for any activity, i.e., building
> permit applications, for . . . the 273 Mall
> . . . .
>
> We have been advised by the Law Department
> that there is a zoning problem at the 273
> Mall site.  Basically, the site is zoned M-1
> which will not support retail shopping uses.
> At this point in time, I will not try to
> explain the legal reasons as to why there is
> a valid Record Plan or why the Record Plan
> cannot be rescinded by the County; but, never
> the less [sic], we have been instructed by
> the Law Department to withhold building
> permits for any activity. . . ."

<u>Id.</u> at *35-36 (emphasis deleted).

On July 9, 1991, Mitchell sent a memorandum to Bryan C.
Shuler, Director of Planning.  In it, Mitchell recounted the
history of the legal dispute over development of the Property and
stated that Acierno's record plans should not be accorded "'any
effect inasmuch as they purport to permit that which is not
permitted by the Zoning Code.'"  <u>Id.</u> at *45.  Mitchell's
conclusion that Acierno's recorded plans had no effect was based
on his reading of section 23-6(a) of the New Castle County Code.[8]

_____

8.  Section 23-6(a) and (c) provides:

> (a)  No proposed ordinance to amend the
> zoning map shall be acted upon by county

Applying section 23-6(a) and (c) to Acierno's case, Mitchell's

memorandum went on to state:

> "Since this property would have been accorded
> the three-year stability protection regarding
> a proposed rezoning for the site, it also
> received the protection accorded by Section
> 23-6(c) of the Code . . . .
>
> The purpose of the three-year 'moratorium'
> provision is to provide stability to the
> process.  In this case, Section 23-6(c)
> permits a lot owner three (3) years to
> establish a use that but for a recent Zoning
> amendment would have been permitted in that
> district if the particular parcel was

(..continued)

> council within three (3) years after the
> latest of any of the following actions:
>
> * * *
>
> > (3)        Prior approval under the
> > subdivision regulations of a preliminary
> > plan involving any parcel of land, or
> > portion thereof, whose zoning
> > classification would be changed by the
> > proposed amendment; provided, that the
> > applicant and owner of such parcel may
> > withdraw such plan and the provisions of
> > this paragraph shall then cease to be
> > applicable to such parcel or parcels.
> > In no event shall the period permitted
> > under this paragraph exceed three (3)
> > years from the earlier approval under
> > the subdivision regulations of a
> > preliminary plan involving such parcel,
> > or portion thereof.
>
> (c)  No amendment to the zoning code
> regulations shall be applicable to any parcel
> or parcels of land protected by subparagraphs
> . . . (3) . . . of subsection (a) of this
> section during the period of such protection
> . . . .

New Castle County, Del., Code § 23-6(a),(c) (1992); see Acierno,
1994 U.S. Dist. LEXIS 1683, at *46.

protected by Paragraph (1), (3) or (4) of Section 23-6(a). The protection is afforded only for the three-year period and the property owner must establish the non-conforming use during that time. If the use is not established, the Code affords no further protection to that particular parcel. Thereafter, the property owner must comply with the revised provisions of the Zoning Code.

Nor does the recordation of a plan create any rights, vested or otherwise. It is the use that is conferred non-conforming status, not a plan or a permit of any kind. Therefore, since Mr. Acierno did not establish a non-conforming commercial use within the three-year period provided for in Section 23-6(c), he is no longer entitled to establish any commercial use except those very limited instances where such commercial uses are now presently permitted in a M-1 district accessory to the permitted manufacturing/industrial use."

Id. at *46-48.

Mitchell forwarded a copy of his July 9, 1991 memorandum to Robert O'Brien, Director, Department of Public Works, so that O'Brien could "'take appropriate action to ensure that no building permit is issued for any principal commercial use [on the 273 Property] . . . .'" Id. at *48. Mitchell then asked O'Brien, "[a]ccordingly, would you please take any steps necessary to ensure that no permits are issued for this site until complete review and consultation is accomplished with this Department and the Department of Planning.'" Id.

While Mitchell was writing these memos, Acierno was negotiating with prospective commercial tenants for space within his proposed development. Caldor, Inc. ("Caldor") was an

important prospect.  In late 1991 Acierno applied for a permit to build a Caldor store.  Biloon, by letter dated December 18, 1991, told him:

> "Please be advised that New Castle County cannot accept your building permit application for the proposed Caldor Department Store at this site.  Commercial ventures of this nature cannot be situated on lands which contain a manufacturing zoning classification.  Additionally, the existing Record Plan . . . allows for a 70,000 square foot building denoted as Building #4.  The proposed structure is 112,000 square feet.  This is also a discrepancy which must be rectified prior to the issuance of any permits."

Id. at *48-49.

In February, 1992, the Delaware Department of Natural Resources and Environmental Control approved Acierno's temporary erosion and sediment control plan.  In May, 1992, Acierno resubmitted his application for a building permit in connection with the Property.  The accompanying plan provided for a 70,000 square foot building drawn in accord with County standards.  On May 27, 1992, Biloon contacted Mitchell and informed him of Acierno's latest application:  "'We have another application for the dept. store.  This time the building plans agree with the record plan.  What is out next move?'"  Id. at *52.  Mitchell responded:  "'It is not zoned for a retail department store.  He does not get a permit.'"  Id.  Biloon subsequently assigned and then voided a building permit number for the proposed development project on the Property.  By letter dated June 4, 1992, Biloon

advised Acierno: "New Castle County still cannot accept your building permit application for the proposed 70,000 square foot Caldor Department Store at [the 273 Property]." Id. at *54-55.

## C. Procedural History

On July 1, 1992, Acierno filed a complaint under 42 U.S.C.A. § 1983 against the County and others in the district court. He alleged the County's decision to deny him a building permit violated his constitutional rights to due process (both substantive and procedural) and equal protection.

On December 30, 1992, the district court granted Acierno's motion for a mandatory preliminary injunction directing the County to issue him a building permit. See Acierno v. Mitchell, No. 92-384-SLR, 1992 U.S. Dist. LEXIS 20381, at *52 (D. Del. Dec. 30, 1992) (order granting preliminary injunction). The County then filed an interlocutory appeal. On October 4, 1993, this Court vacated the district court's opinion and order, held the case was not ripe and remanded with instructions to dismiss Acierno's section 1983 action without prejudice because Acierno had failed to appeal the County's refusal to issue the building permit to the New Castle Board of Adjustment (the "Board"). Acierno v. Mitchell, 6 F.3d 970, 977-78 (3d Cir. 1993).

Acierno then appealed to the Board, which held an evidentiary hearing on December 2, 1993 and on December 16, 1993 voted to deny Acierno a building permit. The next day, December 17, 1993, Acierno filed the present suit in district

court, repeating the allegations he made in his prior section 1983 complaint. On the same day, the County filed a state court action seeking a declaratory judgment that Acierno had no right to develop the Property for commercial purposes. New Castle County v. Acierno, No. 13302 (Del. Ch. filed Dec. 17, 1993). The state action remains pending.

On January 4, 1994, the district court held an evidentiary hearing on Acierno's motion for a preliminary injunction and, on February 11, 1994, issued its opinion in support of the mandatory injunction Acierno requested. On February 16, 1994, the order granting Acierno's motion for a mandatory preliminary injunction requiring the County to issue a building permit and accord Acierno favorable treatment during inspections of the building process was entered. See Acierno v. New Castle County, No. 93-579-SLR (D. Del. Feb. 16, 1994) (order granting preliminary injunction).

On February 17, 1994, the County filed its timely notice of appeal. It also filed a motion for stay of the injunction pending the appeal. On March 18, 1994, the district court denied the motion for a stay. On April 6, 1994, this Court denied the County's March 23, 1994 motion for a stay pending appeal.

D.  Acierno's Damages

During the Board of Adjustment hearing convened to determine whether Biloon had correctly denied Acierno a building permit, a board member asked for specific information about Acierno's expenses in the planning and development stages of the subdivision and resubdivision process.  Acierno's attorney refused to permit Acierno to respond, stating that he would "absolutely not" provide such information and that evidence of Acierno's expenditures could be found at "page 8, paragraph 19 of [the district court's December 30, 1992] Opinion."[9]  App. at 332.

The Board of Adjustment found:

> Acierno refused to testify concerning costs, and the documentary evidence does not prove that expensive and permanent improvements were constructed in reliance upon M-1 sections of the subdivision and re-subdivision plans.  No credible evidence was presented to the Board which proved that Acierno made a substantial change in position or incurred substantial obligations in reliance on the M-1 sections of the subdivision or re-subdivision approvals.  Any expenses, plans or obligations undertaken by Acierno were related to the commercially zoned portion of the plan.

---

[9].  This Paragraph states:

> In connection with these Record Plans, plaintiff submitted surveys, drainage area plans, site plans, grading and utility plans, sanitary sewer plans, lines and grades plans, entrance details, and road plans.  All of these plans were accepted by the various County and State agencies.  Plaintiff expended thousands of dollars in connection with this work.

Acierno, 1992 U.S. Dist. LEXIS 20381, at *10-11 (emphasis added).

Id. at 344.  The Board also found that "any pre-construction expenses were attributable to the commercial portion of the site (for a McDonalds location) which was not the subject of the building permit, submitted by Acierno."  Id. at 17.[10]

On the issue of Acierno's damages and irreparable harm stemming from them, the district court made these additional findings of fact:

* Acierno has permanently lost the opportunity to lease space to Caldor;

* If Acierno, who is presently negotiating to lease space on the Property to other tenants, is unable to obtain building permits, those prospective tenants with whom he is negotiating will lease at other sites; and

* The continued denial of the building permit will diminish Acierno's ability to develop the property because of competitive market demands and land use limitations.

See Acierno, 1994 U.S. Dist. LEXIS 1683, at *61-62.

---

[10].  The district court did not explain why it refused to defer to this finding or failed to conclude it was not supported by the evidence before adopting contrary findings.  On appeal, the County challenges the district court's failure to give preclusive effect to the factual findings of the Board.  The district court acknowledged that University of Tennessee v. Elliott, 478 U.S. 788, 797-99 (1986), required it to give preclusive effect to the Board's factual findings but seems to have concluded the quoted finding left the question of harm open.  See Acierno, 1994 U.S. Dist. LEXIS 1683, at *9.  Its reasons for rejecting the second finding allocating pre-construction expenses to the McDonalds are not clear.  Under Kollock v. Sussex Count Bd. of Adjustment, 526 A.2d 569 (Del. Super. 1987), a court reviewing the factual findings of the Board may only ignore such findings upon a determination that they are not supported by substantial evidence in the record.  Id. at 571.

## II.  Jurisdiction & Standard of Review

The district court had subject matter jurisdiction over Acierno's section 1983 claim under 28 U.S.C.A. §§ 1331, 1343(3) (West 1993).  We have appellate jurisdiction over a district court's interlocutory order granting a preliminary injunction under 28 U.S.C.A. § 1292(a)(1) (West 1993) providing for appeals from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions . . . ."  Id.; see also Cohen v. Board of Trustees of Univ. of Medicine and Dentistry of New Jersey, 867 F.2d 1455, 1464 (3d Cir. 1989) (in banc) (injunctive order immediately appealable).

We review an order granting a preliminary injunction for abuse of discretion, see Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co., 963 F.2d 628, 633 (3d Cir. 1992), but we review the district court's underlying factual determinations under a clearly erroneous standard and consider the court's determinations on questions of law de novo.  See In re Assets of Myles Martin, 1 F.3d 1351, 1357 (3d Cir. 1993); John F. Harkins Co. v. Waldinger Corp., 796 F.2d 657, 658–59 (3d Cir. 1986), cert. denied, 479 U.S. 1059 (1987).


## III.  Analysis

On appeal, the County challenges the district court's conclusion that Acierno demonstrated the threat of immediate irreparable injury necessary to justify the mandatory preliminary

injunctive relief granted here and also argues that the district court abused its discretion in crafting the terms of the injunction and in providing overly broad relief to Acierno.

In order to obtain a preliminary injunction, "'the moving party must generally show:  (1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured pendente lite if relief is not granted to prevent a change in the status quo.'"  Delaware River Port Auth. v. Transamerican Trailer Transp., Inc., 501 F.2d 917, 919-20 (3d Cir. 1974) (quoting A.L.K. Corp. v. Columbia Pictures Indus., Inc., 440 F.2d 761, 763 (3d Cir. 1971)).  Moreover, while the burden rests upon the moving party to make these two requisite showings, the district court "should take into account, when they are relevant, (3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest."  Id. at 920 (footnote omitted).

In general, to show irreparable harm a plaintiff must "demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial."  Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 801 (3d Cir. 1989).  Economic loss does not constitute irreparable harm:

> [I]t seems clear that the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury:
>
>> "The key word in this consideration is irreparable.  Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.  The possibility that adequate compensatory or other

> corrective relief will be available
> at a later date, in the ordinary
> course of litigation, weighs
> heavily against a claim of
> irreparable harm."

Sampson v. Murray, 415 U.S. 61, 90 (1974) (footnotes omitted)
(quoting Virginia Petroleum Jobbers Ass'n v. FPC, 259 F.2d 921,
925 (D.C. Cir. 1958)).  Thus, in order to warrant a preliminary
injunction, the injury created by a failure to issue the
requested injunction must "'be of a peculiar nature, so that
compensation in money cannot atone for it . . . .'"  A. O. Smith
Corp. v. F.T.C., 530 F.2d 515, 525 (3d Cir. 1976) (quoting Gause
v. Perkins, 3 Jones Eq. 177, 69 Am. Dec. 728 (1857)).  The word
irreparable connotes "'that which cannot be repaired, retrieved,
put down again, atoned for. . . .'"  Id. (quoting Gause, 3 Jones
Eq. 177, 69 Am. Dec. 728).  A party seeking a mandatory
preliminary injunction that will alter the status quo bears a
particularly heavy burden in demonstrating its necessity.
Punnett v. Carter, 621 F.2d 578, 582 (3d Cir. 1980).

In concluding that Acierno demonstrated irreparable
harm, the district court stated:

> It is evident from the record that
> plaintiff alleges economic losses in
> connection with his claims that defendant
> deprived him of his constitutional rights to
> due process and equal protection under the
> law.  Plaintiff claims other harm as well,
> however, including damage to his reputation
> as a business person and lost capacity to
> develop as a result of lost time and tenants
> due to the instant controversy, County
> limitations on development, and competing
> development.

Acierno, 1994 U.S. Dist. LEXIS 1683, at *93-94.  The district court relied heavily on Opticians Association of America v. Independent Opticians of America, 920 F.2d 187 (3d Cir. 1990), in support of its conclusion that Acierno would suffer irreparable harm if he were not immediately granted a building permit, pointing to our statement that "[g]rounds for finding irreparable injury include loss of control of reputation, loss of trade, and loss of good will."  Id. at 195 (citing 2 J. McCarthy, Trademarks and Unfair Competition § 32:44 (2d ed. 1984)).  We think our decision in Opticians Association of America is distinguishable, however, because the result in that case was heavily influenced by the special problem of confusion that exist in cases involving trademark infringement and unfair competition.  Acierno's problem is not analogous.[11]

The district court's reliance on Fitzgerald v. Mountain Laurel Racing, Inc., 607 F.2d 589 (3d Cir. 1979), cert. denied, 446 U.S. 956 (1980), is also misplaced.  There, we concluded

---

[11].  In Opticians Association of America, this Court reversed an order denying a motion for a preliminary injunction and instead instructed the district court to enter an order granting the preliminary injunction because the court incorrectly applied trademark law.  Opticians Ass'n of America, 920 F.2d at 192. Relying on McCarthy's treatise, Trademarks and Unfair Competition, we concluded that the district court had not fully considered the severe detriment to the association's reputation because of the likelihood of confusing the association's services with those of the other group using the association's trademarks. Id. at 195-96 (citing 2 J. McCarthy, Trademarks and Unfair Competition § 32:44 (2d ed. 1984)).  Thus, we held that "[p]otential damage to reputation constitutes irreparable injury for the purpose of granting a preliminary injunction in a trademark case."  Id. at 196 (emphasis added).

there was irreparable injury to the business and reputation of a licensed harness racing trainer as a result of his eviction from a racetrack.  Id. at 601.  The case does not stand for the proposition that any showing of potential harm to a plaintiff's reputation is sufficient to warrant a mandatory preliminary injunction that fundamentally changes the status quo.  Cf. Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987) (reversing order granting preliminary injunction compelling reinstatement of a corrections officer with back pay following his suspension by New Jersey Department of Corrections).  In Morton, we decided that showing some potential harm to reputation is usually insufficient to support a conclusion that irreparable harm exists.  We distinguished Fitzgerald, stating "the licensee in Fitzgerald was potentially barred, not merely impaired, from obtaining employment.  No such extreme deprivation is present here."  Id. at 372 n.13 (citation omitted).

        This record does not show that Acierno's reputation has been significantly damaged by the County's denial of a building permit.  Acierno's application seeks permission for a use that is incompatible with the current zoning ordinance.  Acierno could have avoided his problem if he had acted within three years after his Plan was filed.  It is difficult for us to see how the County's denial of a building permit that Acierno waited almost twelve years to apply for is the cause of any damage Acierno's reputation as a real estate developer may suffer.  It is also difficult for us to believe that this particular development is uniquely important to Acierno in light of the testimony he gave

at his deposition about all the other real estate projects in which he is interested.  See App. at 184-97.

Rather, we think the inquiry into irreparable harm in Acierno's case must focus on whether money damages can make him whole if his wish to develop the property as a commercial mall is wrongfully delayed.  Acierno testified on deposition that "[potential tenants] are lined up at the door to lease space at the site . . . ."  Id. at 559.  He acknowledged that no potential tenant had threatened to locate elsewhere if the district court denied the preliminary injunction.  Id. at 557-58.  His testimony indicates that no other site in the area presently poses any direct threat to his development:

> [O]ther sites in the area, are either not zoned or if they are they don't have the traffic capacity to be able to use them for a store as large [as required by one potential tenant]. . . .  [My site] is probably the only site . . . that can be developed nowadays in [the metropolitan] area because of the traffic problems that exist there.

Id. at 553.  The district court's finding that intervening commercial development might reduce the feasibility of Acierno's development is clearly erroneous.[12]

---

[12].  The only evidence which may indicate otherwise is said to appear at page 22 of the transcript of Acierno's deposition, where he testified:  "Every major tenant we've talked to . . . has said that they will go elsewhere . . . if the [building] permit does not issue."  Brief for Appellee at 41.  We assume this reference is accurate, though it is not included in the appendix, but we believe it is nevertheless insufficient to demonstrate a right to a mandatory preliminary injunction.

Finally, we consider Acierno's contention that he will lose a key anchor tenant with whom he is presently negotiating if he does not get a building permit forthwith. He argues that the loss of this anchor tenant will have a domino effect on his ability to attract other tenants. He says that there is no way to measure his financial loss if the deal falls through because he is only engaged in negotiations with the proposed anchor tenant and has reached no final agreement with it on financial terms. Like Janus gazing forward and backward each New Year, this argument points in two directions. The negotiating stage Acierno is now engaged in could be thought of as making any harm he will suffer if the building permit is delayed too remote and speculative to justify a mandatory injunction. As we stated in Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351 (3d Cir. 1980):

> [M]ore than a risk of irreparable harm must be demonstrated. The requisite for injunctive relief has been characterized as a "clear showing of immediate irreparable injury," or a "presently existing actual threat; [an injunction] may not be used simply to eliminate a possibility of a remote future injury . . . ."

Id. at 358 (citations omitted) (quoting Ammond v. McGahn, 532 F.2d 325, 329 (3d Cir. 1976) and Holiday Inns of America, Inc. v. B & B Corp., 409 F.2d 614, 618 (3d Cir. 1969)); see also Campbell Soup Co. v. Conagra, Inc., 977 F.2d 86, 91-92 (3d Cir. 1992) (establishing some remote risk of irreparable harm not enough).

Even if we view Acierno's anchor tenant's problem in the direction he asks, his problem is not solved on this record's showing of irreparable harm. An inability to precisely measure financial harm does not make that harm irreparable or immeasurable. If Acierno has a right to proceed with commercial development on the land he has allowed to remain undeveloped more than twelve years after the Delaware Supreme Court directed the County to approve and file his Plan, we think any actionable harm he may suffer, if it is ultimately determined that the County violated his constitutional rights, can be remedied by an award of money damages. This record shows no more than a potential for purely economic injury to Acierno. If Acierno succeeds on the merits of his claim, we believe that economic loss, if it occurs, can be measured in monetary terms and satisfied by a damage award after trial on the merits.[13]

---

[13]. On remand, however, we think the district court would be wise to reconsider whether it should abstain from further action in this case, particularly in connection with the injunctive relief it is asked to issue, in light of the pending state court action in which the County seeks a declaratory judgment affirming the County's refusal to issue a building permit to Acierno. A party arguing in favor of abstention under the principles of Younger v. Harris, 401 U.S. 37 (1971), must show:

> (1) there are ongoing state proceedings involving the would-be federal plaintiffs that are judicial in nature, (2) the state proceedings implicate important state interests, and (3) the state proceedings afford an adequate opportunity to raise the federal claims . . . .

Marks v. Stinson, 19 F.3d 873, 882 (3d Cir. 1994) (citing Middlesex County Ethics Comm'n v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)). The existence of these facts, however, does not compel abstention. Id.; see also Gwynedd Properties,

## IV.  Conclusion

For these reasons, the district court's order granting Acierno a preliminary injunction compelling the County to issue a building permit and discontinue any interference with Acierno's development of the Property will be reversed and the case remanded for further proceedings consistent with this opinion.

(..continued)
Inc. v. Lower Gwynedd Township, 970 F.2d 1195, 1201 (3d Cir. 1992) ("[W]here federal proceedings parallel but do not interfere with the state proceedings, the principles of comity underlying Younger abstention are not implicated.").  Indeed,

> [a] federal plaintiff may pursue parallel actions in the state and federal courts so long as the plaintiff does not seek relief in the federal court that would interfere with the state judicial process.  Moreover, since parallel proceedings always involve a likelihood that a final merits judgment in one will effectively terminate the other, it necessarily follows that the mere fact that a judgment in the federal suit might have collateral effects in the state proceeding is not interference for Younger purposes.

Marks, 19 F.3d at 885 (footnote omitted) (citing Gwynedd Properties, Inc., 970 F.2d at 1200-03).