Harry DOUVOS, Appellant

v.

Francisco QUINTANA, Warden; Dr. Kent Cannon, Residential Drug Abuse Program Coordinator.

No. 09–3449.

United States Court of Appeals, Third Circuit.

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B) or Summary Action

Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6 Dec. 10, 2009.

Opinion filed: Dec. 29, 2009.

Harry Douvos, Bradford, PA, pro se.

Robert L. Eberhardt, Esq., Laura S. Irwin, Esq., Office of the United States Attorney, Pittsburgh, PA, for Appellees.

Before: BARRY, FISHER and VAN ANTWERPEN, Circuit Judges.

OPINION

PER CURIAM.

Appellant Harry Douvos, a federal prisoner incarcerated at the Federal Correctional Institution at McKean in Bradford, Pennsylvania, is serving a sentence of 60 months imprisonment imposed by the United States District Court for the Eastern District of Virginia at D.C. Crim. No. 3:06–cr–00337–1. His projected release date is December 10, 2010. Douvos began participating in the Residential Drug Abuse Program ("RDAP"), *see* 18 U.S.C. § 3621(e), at FCI–McKean on August 21, 2008. The RDAP gives the Bureau of Prisons the discretion to alter a prisoner's conditions of confinement or allow him a sentence reduction of up to one year if he successfully completes the program and his conviction was for a nonviolent offense.

*See id.* at § 3621(e)(2)(B). On May 17, 2009, Douvos was issued a misconduct, which, although not serious in itself, had serious implications for his continued participation in the RDAP.

According to the Incident Report, on May 17, 2009, a recreation specialist searched Douvos's hobby craft assigned locker and discovered ceramic products he was not allowed to possess.[1] Douvos was issued a Code 305 misconduct for possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels. He had a Unit Discipline Committee ("UDC") hearing at which he admitted that he had retained the items when he discovered them in his locker. Based on this admission, Douvos was adjudicated guilty of the prohibited act and sanctioned to "hobby craft program removal." Warden Francisco J. Quintana denied Douvos's request for an administrative remedy on June 8, 2009.

Unfortunately for Douvos, this misconduct resulted in a fourth Drug Abuse Program ("DAP") warning, and four DAP warnings in his case constituted grounds for expulsion from the RDAP. On May 27, 2009, Douvos was expelled three classes short of completing the program. As a result of not completing the program, Douvos did not get the eleven-month and one week reduction in his sentence he would have earned had he successfully completed

the program, nor did he get the six-month halfway house placement that had been scheduled to begin on June 16, 2009.[2]

On or about June 29, 2009, Douvos submitted for filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in United States District Court for the Western District of Pennsylvania (which eventually was filed on the docket on July 23, 2009), and a motion for a preliminary injunction seeking an expedited telephone hearing and reinstatement in the RDAP. Claiming a violation of his constitutional right to due process in that he was not allowed to present witnesses or documentary evidence at his UDC hearing, Douvos sought expungement of the May 17, 2009 Incident Report.[3] In the alternative, he asked to be allowed to repeat phase three of the RDAP. In addition to seeking expungement of the Incident Report (which expungement would automatically render the fourth DAP warning void), Douvos also claimed that the second and third DAP warnings—for falling asleep in class—were unlawfully obtained because of his amply-documented Sleep Apnea disability. He further contended that Program Statement 5330.11 does not require expulsion after four DAP warnings, and he identified two fellow prisoners who had been allowed to graduate from the program with more than four DAP warnings.

On July 17, 2009, the Magistrate Judge held a telephone conference in her cham-

---

1. Specifically, all authorized ceramic products must be non-toxic, non-flammable, and contain no health or warning labels. Douvos's locker contained two jars of Mayco, Jungle Gems Crystal Glaze and one jar of Duncan SY 554 Antique Bronze Specialty Product, both of which have a high lead content and health caution labels on them, one jar of Amaco Crystaltex Liquid Glaze, which carries a caution label for its high copper content, and one bottle of Magic Mender, a skin and eye irritant that is harmful or fatal if swallowed.

2. Douvos does not object to the BOP's apparent policy of maximizing time spent in a halfway house even when such maximization would decrease the maximum sentence reduction under section 3621(e)(2)(B).

3. Douvos wanted to establish that the items in his locker could be or had been purchased by prisoners through normal channels and thus were not prohibited.

bers on the motion for a preliminary injunction with Douvos and two assistant United States Attorneys participating on behalf of the Bureau of Prisons. A court reporter was present. Douvos explained the nature of his complaint, and the Magistrate Judge questioned counsel for the BOP as to why Douvos was not permitted to call witnesses at his hearing. Counsel explained that, because the Incident Report was minor—that is, loss of good time credit was not among the possible sanctions—Douvos's misconduct was adjudicated through the Unit Discipline Committee rather than by a Disciplinary Hearing Officer. *See N.T.,* 7/17/09, at 3–4. Witnesses are not permitted at a UDC hearing. *See id.* at 4.

The Magistrate Judge then asked BOP counsel if the rules and regulations permit a prisoner to be expelled from the RDAP for a misconduct and counsel answered that Douvos's RDAP agreement, which he signed, plainly stated that expulsion can result from an incident report. *See id.* at 6–7. Furthermore, the RDAP rules provide that, after a certain number of DAP warnings, expulsion will be considered. *See id.* Douvos had notice from the three prior DAP warnings that he could be expelled, and the Incident Report resulted in a fourth warning. *See id.* The Magistrate Judge also questioned BOP counsel about Douvos's contention that certain identified prisoners with more than four DAP warnings had recently been allowed to graduate from RDAP, but counsel had not yet investigated this allegation and could not supply a substantive response to it. *See id.* at 10–11. It was noted, however, that all decisions concerning satisfactory completion of RDAP are made on a case-by-case basis. *See id.*

The Magistrate Judge stated her Report and Recommendation on the record and she recommended that the motion for a preliminary injunction be denied because Douvos failed in his burden to show both a likelihood of success on the merits and irreparable injury, *see Hoxworth v. Blinder, Robinson & Co.,* 903 F.2d 186, 197 (3d Cir.1990). She concluded that the procedural due process protections afforded by *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), apply only when a prisoner's constitutional interests are implicated. *Sandin v. Conner,* 515 U.S. 472, 487, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). Since Douvos did not have a constitutionally protected interest in early release or release to a halfway house, he had no right to present witnesses or documentary evidence before the UDC. His likelihood of success on the merits was low because the misconduct did not result in a loss of good time credits, he had previous DAP warnings, and the decision whether an inmate should graduate from the RDAP is completely discretionary. *See N.T.,* at 12–15. Douvos could not show irreparable injury because he has no right to a halfway house placement or early release. *See id.* at 15.

In an order entered on August 11, 2009, the District Court approved and adopted the Report and Recommendation, and, in pertinent part, denied the motion for a preliminary injunction. Douvos has appealed this order. Our Clerk granted him leave to appeal *in forma pauperis* and advised him that his appeal was subject to summary dismissal under 28 U.S.C. § 1915(e)(2)(B) or summary affirmance under Third Cir. LAR 27.4 and I.O.P. 10.6. He was invited to submit argument in writing, but he has not done so.

We will summarily affirm under Third Circuit LAR 27.4 and I.O.P. 10.6, because it clearly appears that no substantial question is presented by this appeal. We have jurisdiction over the District Court's interlocutory order denying a preliminary

injunction under 28 U.S.C. 1292(a)(1) (providing for appeals from "[i]nterlocutory orders of the district courts ... granting, continuing, modifying, refusing or dissolving injunctions...."). For the District Court to grant an injunction, the moving party must show that he is likely to succeed on the merits of his petition and that he will suffer irreparable harm if relief is not granted. *Hoxworth*, 903 F.2d at 197–98. The District Court also should consider the possibility of harm to the non-moving party if the injunction is granted, and whether granting the injunction is in the public interest. *See id.* In determining whether the District Court abused its discretion in denying a preliminary injunction, we review the court's underlying factual determinations under a clearly erroneous standard and consider the court's determinations on questions of law de novo. *Acierno v. New Castle County*, 40 F.3d 645, 652–53 (3d Cir.1994).

The District Court properly denied Douvos's motion for a preliminary injunction for the reasons given by the Magistrate Judge. Douvos failed in his burden to show both a likelihood of success on the merits and irreparable injury. The interests protected by the Due Process Clause are "generally limited to freedom from restraint which ... imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293. Douvos is serving a valid sentence, and expulsion from a rehabilitative program for a violation of its rules and regulations "falls within the expected perimeters of the sentence imposed by a court of law." *Id.*

Moreover, the statute provides: "The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program *may* be reduced by the Bureau of Prisons, but such reduction may not be more than one year from the term the prisoner must otherwise serve." 18 U.S.C. § 3621(e)(2)(B) (emphasis added). Use of the word "may" suggests that Congress intended to give the BOP some discretion in administering the statute, even when an inmate has completed the program. Here, Douvos had only a provisional eligibility for halfway house placement and sentence reduction because he did not complete the program.

Since Douvos made no showing that he has a protected interest under § 3621(e)(2)(B), he had no right to present witnesses or documentary evidence before the UDC under *Sandin*, 515 U.S. 472, 115 S.Ct. 2293. In addition, nothing in the record suggests that Douvos will suffer irreparable injury if he is denied early release or release to a halfway house since he has already served, apparently without serious incident, four years of his five-year sentence. *See Continental Group, Inc. v. Amoco Chemicals Corp.*, 614 F.2d 351, 359 (3d Cir.1980) (risk of irreparable harm means clear showing of immediate irreparable injury or presently existing actual threat). Accordingly, the preliminary injunction standard is not met.

We note, however, that federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. *Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3d Cir.1996). Douvos noted in a brief in support of his motion for a preliminary injunction that he had completed the first round of the administrative process by appealing to the Warden but that his appeal to the Regional Director remained pending.[4] Our decision affirming the denial of a preliminary

---

4. In addition, there is no indication on the record before us that he exhausted his admin-

istrative remedies with respect to his claim

injunction in this federal habeas corpus action is without prejudice to the administrative process. BOP counsel indicated at the telephone hearing that she had yet to investigate Douvos's allegation of arbitrariness in the Program Coordinator's decision to let some participants graduate from the program with more than four DAP warnings. Because the case is still in progress, our Opinion affirming the denial of Douvos's motion for a preliminary injunction should not be read to express a view on the merits of this allegation. We decide only that the standard for a preliminary injunction has not been met.

For the foregoing reasons, we will summarily affirm the order of the District Court denying appellant's motion for a preliminary injunction.

that the second and third DAP warnings were      improper.