**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

————————————

No. 22-2336

————————————

OXFORD HOUSE, INC., a Delaware not for profit corporation,
                                                                          Appellant

v.

TOWNSHIP OF NORTH BERGEN, a New Jersey municipal corporation

————————————

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 2:21-cv-19260)
District Judge: Honorable Esther Salas

————————————

Submitted Under Third Circuit L.A.R. 34.1(a):
June 12, 2023

————————————

Before: PORTER, FREEMAN, and FISHER,
*Circuit Judges*

(Filed: July 28, 2023)

————————

OPINION*

————————

———————————

* This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*.

Oxford House helps establish homes around the Nation for individuals who are recovering from addiction. In the past, it has experienced unlawful discrimination from local zoning officials. *See United States v. Borough of Audubon, N.J.*, 797 F. Supp. 353, 360 (D.N.J. 1991), *aff'd*, 968 F.2d 14 (3d Cir. 1992). In this case, Oxford House claims that the Township of North Bergen declined to issue a necessary permit for a new location because of the disabilities of the recovered addicts who would live there.

Oxford House asked the District Court to order the Township to issue the permit. The District Court declined, concluding that the Township offered legitimate, non-discriminatory reasons for its decision and that Oxford House is therefore unlikely to prove violations of the Fair Housing Act, 42 U.S.C. § 3601 et seq., or Americans with Disabilities Act, 42 U.S.C. § 12131 et seq. Because Oxford House seeks extraordinary relief and has not carried its heavy burden, we will affirm the denial of the preliminary injunction.

I

Appellant Oxford House, Inc. is a Delaware not-for-profit corporation that "assists in the establishment of affordable housing and support for individuals recovering from substance abuse and/or alcoholism." J.A. 20. It charters individual Oxford Houses around the country, including nearly 150 in New Jersey. Each Oxford House "must (1) be financially self-supported, (2) be democratically self-run, and (3) immediately expel anyone who relapses into drug and/or alcohol use." J.A. 21.

In February 2021, Oxford House North Bergen, an unincorporated association chartered by Oxford House, Inc., (collectively, "Oxford House"), rented a unit at 1109 8th St. in North Bergen. According to a Township ordinance, new occupants cannot occupy a building until the Township's construction official issues a Certificate of Continuing Occupancy ("CCO"). *See* North Bergen, N.J., Ordinance Requiring Certificates of Continuing Occupancy § 3 (Oct. 15, 1992), *reproduced at* J.A. 294–96 (CCO Ordinance). So on February 25, 2021, the realtor representing the owner of 1109 8th St. submitted a CCO application on behalf of Oxford House. The realtor also emailed Peter Hammer, a Township employee who oversees its zoning and construction officials, and attached a document explaining the Oxford House concept.

After another Township employee flagged the CCO application to Hammer, he reviewed it and consulted the document explaining how Oxford Houses operate. According to that document, "Oxford Houses are considered single family residences for purposes of zoning." J.A. 246. Hammer denied the application, informing the realtor over the phone that Oxford House's intended use violated the Township's zoning code and later confirming the denial in a brief email. J.A. 7. At his deposition, he explained:

> The only reason that this thing was denied was because all of the literature that I saw said a single family [sic] dwelling. This particular house, this particular address is a two-family dwelling. If they had applied – let's say that there's a single-family house next door to this house[,] it would have been approved.

J.A. 282. Hammer also testified that he stopped his investigation immediately after reading Oxford House's materials because he thought that "as soon as Oxford House found out that this was not a one family house[,] . . . [the] application would be

3

withdrawn" and "all of this would be moot." J.A. 277. 1109 8th St. has been zoned as a two-family dwelling since 1979.

Hammer advised the realtor that Oxford House could speak with Cheyne Scott, an attorney for the Township, about the denial. After receiving an email from Oxford House, Scott replied and offered her explanation:

> The Township does not dispute that Oxford House tenants are a single family unit and that Oxford House would normally be permitted to operate as a community residence in a single family dwelling, pursuant to N.J.S.A. 40:55D-66.1 That is not the basis upon which the Certificate of Occupancy ("CO") was denied. The CO was denied because Oxford House is seeking a CO to operate a community residence in the second unit of a two-family dwelling. Upon information and belief, the first unit of the building is under separate ownership. . . . The Township is aware of no case law or statutory authority to allow a community residence such as Oxford House to operate in a two-family or multi-family dwelling. If you have any authority to the contrary, please provide same for my review. If this were a single family dwelling, the CO application would have certainly been granted.

J.A. 61–62. Oxford House replied two days later, challenging Scott's interpretation of the community residence provision, N.J. Stat. Ann. § 40:55D-66.1, and threatening to seek a temporary restraining order.

Three months later, on October 23, 2021, Oxford House filed this action in the District Court, alleging that North Bergen denied the CCO application "because of the status of Oxford House residents as recovering alcoholics and substance abusers." J.A. 38. Oxford House brought claims under the Americans with Disabilities Act and the Fair Housing Act, as amended by the Fair Housing Amendments Act. *Id.* at 37–40. The District Court construed Oxford House's complaint as requesting a preliminary injunction, which it denied. J.A. 6. The Court found that Oxford House failed to establish

4

a likelihood of success on the merits for its discrimination claims because it "has not adduced sufficient evidence to show that the prospective residents' status as handicapped played any role in Defendant's denial of the [certificate of continuing occupancy]." J.A. 13–14.

Oxford House appealed. The District Court had federal question jurisdiction under 28 U.S.C. § 1331. We have jurisdiction to review the court's denial of a preliminary injunction under 28 U.S.C. § 1292(a)(1), even though it is not a final order.

## II

The District Court denied Oxford House's request for a preliminary injunction. We will affirm. Oxford House has not shown that it is reasonably likely to succeed in its claims that the Township violated the FHA or ADA.

## A

To obtain a preliminary injunction, Oxford House must demonstrate "(1) a reasonable probability of eventual success in the litigation, and (2) that it will be irreparably injured . . . if relief is not granted." *Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3d Cir. 2017) (citation omitted). If these "gateway factors" are met, courts consider "(3) the possibility of harm to other interested persons from the grant or denial of the injunction, and (4) the public interest." *Id.* at 176, 179 (quoting *Del. River Port Auth. v. Transamerican Trailer Transport, Inc.*, 501 F.2d 917, 919–20 (3d Cir. 1974)).

"It frequently is observed that a preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per

curiam) (quoting 11A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2948, pp. 129–130 (2d ed. 1995)). And Oxford House "bears a particularly heavy burden" because it seeks a mandatory injunction ordering the Township to issue the CCO, rather than an injunction preserving the status quo. *Acierno v. New Castle Cnty.*, 40 F.3d 645, 653 (3d Cir. 1994) (citing *Punnett v. Carter*, 621 F.2d 578, 582 (3d Cir. 1980)). *See* J.A. 42 (asking the District Court to "order[] the Defendant to grant the Application."). We review the District Court's denial of Oxford House's motion for an abuse of discretion, deferring to underlying factual findings if they are not clearly erroneous and evaluating legal conclusions de novo. *Acierno*, 40 F.3d at 652. Absent erroneous factual findings or legal conclusions, "we will find an abuse of discretion only upon concluding that the District Court's view was contrary to reason." *Cleary ex rel. Cleary v. Waldman*, 167 F.3d 801, 804 (3d Cir. 1999).

B

Oxford House alleges that the Township discriminated against recovering addicts when it declined to issue the CCO, violating the Fair Housing Act and Americans with Disabilities Act. The FHA, as amended by the Fair Housing Amendments Act of 1988 (FHAA), prohibits housing discrimination "because of a handicap."[1] 42 U.S.C. § 3604(f); *see Cmty. Servs., Inc. v. Wind Gap Mun. Auth.*, 421 F.3d 170, 176 (3d Cir. 2005).

---

[1] "'Handicap' means, with respect to a person, [] (1) a physical or mental impairment which substantially limits one or more of such person's major life activities, (2) a record of having such an impairment, or (3) being regarded as having such an impairment." 42 U.S.C. § 3602(h).

6

Likewise, the ADA prohibits public entities from discriminating against any "qualified individual with a disability."[2] 42 U.S.C. § 12132.

A plaintiff can establish a violation of the FHA or ADA by showing that the challenged actions are (1) the product of intentional discrimination, (2) disparately impact the plaintiff without a legitimate, non-discriminatory explanation, or (3) reflect the defendant's failure to make reasonable accommodations. *Wind Gap*, 421 F.3d at 176 (citing 42 U.S.C. § 3604(f)(2) and (f)(3)(B)). We evaluate such claims through the analytical frameworks developed in our employment discrimination cases, "including their coordinate burden-shifting analyses once plaintiff has made a prima facie showing of discrimination under a specific claim." *Id.* Oxford House makes disparate treatment and impact arguments, neither of which we find convincing.

### 1

"Generally, to prevail on a disparate treatment claim, a plaintiff must demonstrate that some discriminatory purpose was a motivating factor behind the challenged action." *Id.* (citation and quotation marks omitted). The District Court found that Oxford House failed to make this showing. We agree.

---

[2] "The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131.

In *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, the Supreme Court established a framework for evaluating claims of intentional, unlawful discrimination. 429 U.S. 252 (1977). The plaintiffs alleged that Arlington Heights denied their petition for rezoning due to the race of the residents of the planned development. *Id.* at 263. The Court held that the plaintiffs bore the "burden of proving that discriminatory purpose was a motivating factor in the Village's decision." *Id.* at 265–66, 270. And it explained that "[d]etermining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available." *Id.* at 266. Pertinent evidence may include the "historical background" and "specific sequence of events" preceding the challenged decision; testimony and contemporary statements by decision-makers; and whether normal procedures were followed. *Id.* at 267.

Many courts apply the *Arlington Heights* approach in disability discrimination cases arising under the FHA and ADA. *Wind Gap*, 421 F.3d at 176–77 & n.5 (collecting cases); *see, e.g., Hansen Found., Inc. v. Atlantic City*, 504 F. Supp. 3d 327, 335–36 (D.N.J. 2020). We do the same here. Invoking *Arlington Heights*, Oxford House argues that it is likely to succeed on its disparate treatment claim. It points to three pieces of evidence.

First, Oxford House argues that North Bergen "has a history of denying permits to organizations who provide housing for persons with disabilities." Opening Br. 24. But the single instance it cites occurred more than 30 years ago. *See Easter Seal Soc. of N.J., Inc. v. Twp. of North Bergen*, 798 F. Supp. 228, 230, 250 (D.N.J. 1992) (issuing preliminary

8

injunction "based on [] preliminary evidence" and requiring Township to issue construction permit to community residence). It is true that "a series of official actions taken for invidious purposes" may be relevant to the intent inquiry under *Arlington Heights*, 429 U.S. at 267. But a single, dated, isolated incident is not a "series of official actions." So the Township's past is not enough for Oxford House in the present case.

Second, Oxford House highlights various steps of the Township's evaluation that, in Oxford House's view, suggest discriminatory animus. For example, Hammer, the Township's Director of Community Improvements, testified that he personally reviewed the CCO application because another Township employee "flagged" it as "problematic" and in need of further review. Opening Br. 6, 24. Oxford House also emphasizes that Hammer referred to the prospective residents of 1109 8th St. as "these people." *Id.* at 25 (citing J.A. 283). And it stresses that Hammer failed to notify Oxford House of the denial of the CCO in writing, which Township law requires. *Id.* at 26; CCO Ordinance § 6F.

None of this evidence satisfies Oxford House's "particularly heavy burden" to show, at this early stage of the case, that it is reasonably likely to succeed on its discrimination claims. *See Acierno*, 40 F.3d at 653. Hammer testified that, each year, he personally reviews hundreds of applications that are flagged for potential issues. Thus, the fact that Hammer—rather than the Township's construction official, who reports to him—denied the application does not suggest animus. And when read in context, Hammer's statement about "these people" is not facially discriminatory. In fact, it highlights a non-discriminatory reason for the denial:

9

I don't know how many times I can say this to you. There was no problem with the Oxford House mission, if you will, there is no problem with having these people reside in the township. The only problem that I have is that [] all of everything that I saw said single family residence. This is not a single family residence.

J.A. 283. Hammer's choice of demonstrative pronoun when referring to Oxford House's clients was ordinary English usage, not evidence of discriminatory animus.

It is true, however, that the Township's CCO Ordinance states that "the Construction [sic] shall deny the application by notifying the applicant in writing specifying the reason." CCO Ordinance § 6F. Hammer admits that he did not notify Oxford House or its realtor in writing. He explained that he "did not do any of the other things" that he would normally do in processing an application because he assumed that "as soon as Oxford House found out that this was not a one family house[,] . . . [the] application would be withdrawn" and "all of this would be moot." J.A. 277. Although "[d]epartures from the normal procedural sequence also might afford evidence that improper purposes are playing a role," *Arlington Heights*, 429 U.S. at 267, Oxford House has not yet demonstrated how Hammer's minor deviation—which he explained under oath—clearly suggests that discrimination was a motivating factor in the denial. *See Armstrong*, 502 U.S. at 972 (recognizing that a preliminary injunction is a "drastic remedy . . . that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.").

Oxford House's third argument in support of its disparate treatment theory is that Township officials misapplied applicable zoning law. As discussed, after Oxford House followed up with the Township's attorney, Cheyne Scott, Scott responded that the CCO

10

was denied because "Oxford House is seeking [] to operate a community residence in the second unit of a two-family dwelling." J.A. 61. Scott's view—which the Township restates on appeal—is that N.J. Stat. Ann. § 40:55D-66.1 prohibits such a use. The provision states:

> Community residences for persons with developmental disabilities, . . . and adult family care homes for persons who are elderly and adults with physical disabilities shall be a permitted use in all residential districts of a municipality, and the requirements therefor shall be the same as for single family dwelling units located within such districts.

Whether Scott and the Township read the above statute correctly is largely beside the point. Again, what Oxford House needs at this stage is clear evidence supporting the conclusion that it is reasonably likely to succeed on the merits. As the District Court explained, a debatable reading of a zoning statute does not suffice, nor is it evidence of intentional discrimination that the Township consulted what it thought to be an applicable state law. *See* J.A. 13–14.

We agree with the District Court that, at this early stage of the case, Oxford House "has not adduced sufficient evidence to show that the prospective residents' status as handicapped played any role" in the denial of the CCO. J.A. 13.[3]

---

[3] Oxford House maintains that the District Court "abused its discretion by failing to evaluate the facts demonstrating that the Township's decision . . . was discriminatory." Reply Br. 2. We disagree in toto. The District Court carefully evaluated the facts presented to it and concluded, as do we, that Oxford House has failed to show a reasonable likelihood of success on the merits.

Oxford House also argues that the District Court erred by holding that Oxford House is not entitled to a presumption of irreparable harm and in fact did not demonstrate irreparable harm. Because Oxford House has failed to establish the first gateway factor for obtaining a preliminary injunction, reasonable likelihood of success on the merits, we

11

A second way to prove unlawful discrimination is by showing that a decision has a disparate impact on a protected group and requiring the decision-maker to explain its choice. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). The plaintiff must first establish a prima facie case of discrimination, which in the FHA context requires showing that "the Township's action had a greater adverse impact on the protected group . . . than on others." *Lapid-Laurel, L.L.C. v. Zoning Bd. of Adjustment*, 284 F.3d 442, 466–67 (3d Cir. 2002). The burden then "shifts to the defendant to show that it had a legitimate, non-discriminatory reason for the action and that no less discriminatory alternatives were available." *Id.* at 467. If the defendant makes this production, "the trier of fact proceeds to decide the ultimate question: whether plaintiff has proven that the defendant intentionally discriminated against him." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993) (Title VII) (internal citation, quotation marks, and brackets omitted); *see also Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

The District Court determined that Oxford House failed to establish a prima facie case of discrimination. The court explained that Oxford House "provides no evidence— statistical or otherwise—to support the notion that Defendant's decision had a greater adverse impact on a protected group," adding that Oxford House's claim "rests on mere speculation." J.A. 15. Oxford House has pointed to no such evidence on appeal, either.

---

need not consider its arguments about irreparable harm, which is the second gateway factor. *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).

We see no reason to disturb the District Court's reading of the record. *See Texas Dept. of Housing and Cmty. Affairs v. Inclusive Cmtys. Proj., Inc.*, 576 U.S. 519, 543 (2015) ("A plaintiff who fails to allege facts at the pleading stage or produce statistical evidence demonstrating a causal connection cannot make out a prima facie case of disparate impact.").

*****

For the reasons stated above, we will affirm the District Court's denial of a preliminary injunction.